The State of Maryland *vs.* Augustine J. Dalrymple, and J. Southgate Lemmon, Administrators of William H. Dalrymple, deceased.

*Construction of sec. 102, of Art. 81, of the Code of 1888, imposing a Tax on Collateral inheritances — Constitutional law.*

Letters of administration were taken out in Maryland upon the estate of W. H. D. a deceased non-resident. At the time of his

State *vs.* Dalrymple and Lemmon, Adm'rs.

death the decedent was entitled to an undivided one-fourth interest in the personal estate of his deceased brother E. A. D. a resident of Maryland, who died in that State shortly before W. H. D. Upon the settlement of the estate of E. A. D.—the administrators of W. H. D. received therefrom sundry certificates of National Bank stock and Baltimore City stock, several Missouri State bonds, and cash, which, after deducting expenses, were held by them for delivery to the residuary legatee of W. H. D. who was neither his mother, wife, child, nor lineal descendant, and was herself a resident of the State where W. H. D. resided at the time of his death.    HELD :

1st. That there was payable out of said personalty to the State of Maryland, under section 102, of Article 81, of the Code of 1888, a collateral inheritance tax of two and a half per centum.

2nd. That the amount of the tax depended upon the sum in the hands of the administrators payable to the legatee.

3rd. That the Legislature has the power to impose such tax, not only where it affects citizens of this State, but also where nonresidents or aliens claim by inheritance or by will property located here.

4th. That the words "being in this State," contained in said section, refer not to the decedent himself, but to his property.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Wm. Pinkney Whyte, Attorney-General,* for the appellant.

The opinion of the Court below was based entirely upon the decision of this Court in the case of *Citizens Nat. Bank vs. Sharp, Adm'r,* 53 *Md.,* 521, wherein the point here at issue was not directly made, and not before the Court at all.    The question there was purely and simply one as to whether a voluntary payment by

a debtor in this State, to the executor or administrator of his creditor, appointed in another State, in which the creditor had his domicile at the time of his death, is valid, and a good discharge of the debt, where such payment has been made before any administration has been granted in Maryland. The question of the collateral inheritance tax was not raised in that case, and did not in any manner affect the issue.

The law prescribing the collateral inheritance tax was a proper exercise of the power of the Legislature to impose a tax of that kind upon all property within the State, passing collaterally, and the meaning and intent of the law was to subject all property, whether of non-residents or citizens of the State, *"being in this State,"* and passing from any decedent as provided for, to the payment of this tax. *See Cook vs. Woodard,* 5 *Demarest Surrogate Ct. Rep.,* (*N. Y.,*) 96; *In re Howard,* 5 *Demarest Surrogate Court Rep.,* 483.

Succession to an inheritance may be taxed as a "privilege," notwithstanding the property of the estate is taxed, and taxes on property are required by the Constitution of the State to be uniform. *Cooley on Taxation,* 584; *Eyre vs. Jacob,* 14 *Gratt.,* 422.

The intention of the Legislature was plainly to tax the transmission of property, by devise or descent, to collateral kindred; to require that a party thus taking the benefit of a civil right, secured to him under the law, should pay a certain premium for its enjoyment. *Eyre vs. Jacob,* 14 *Gratt.,* 428.

It is a tax upon the *transitus* of the property, and not on the property itself, or on the person. *Ibid.,* 430.

*J. Southgate Lemmon,* and *Albert Ritchie,* for the appellees.

McSherry, J., delivered the opinion of the Court.

William H. Dalrymple, a resident of California, died there on the twenty-second of November, eighteen hundred and eighty-one, leaving a last will and testament executed according to the laws of that State.   By his will he bequeathed all his personal property to one Marie E. Hatch, now Marie E. Gamble, also of California.   She was not the mother, the wife, the child nor lineal descendant of the testator.   The will was duly admitted to probate in the Probate Court of the decedent's domicile, and letters of administration were there granted with the will annexed to Peter Alferitz. Subsequently a certified transcript of said will and probate was admitted by the Register of Wills of Baltimore City to record and was recorded in his office. Thereafter letters of administration with the will annexed, were issued by the Orphans' Court of Baltimore City to the appellees.   When William H. Dalrymple died he was entitled to a one-fourth undivided part of the personal estate of his brother, Edwin A. Dalrymple, a resident of the State of Maryland, who died in the City of Baltimore in October eighteen hundred and eighty-one, some three weeks prior to the decease of William. Upon the settlement of Edwin's estate the appellees received, as administrators of William's estate, sundry certificates of National Bank stock and Baltimore City stock, several Missouri State bonds and cash, aggregating, at the appraised value of the securities, the sum of $27,337.87; which was diminished by the payment of costs and expenses to the sum of $21,449.21; but the accretions from dividends and interest have since increased this latter amount to the sum of $27,320.77, which the appellees now hold ready for delivery to the said Mrs. Gamble—the legatee named in William's will. Upon this sum the State of Maryland claims that the appellees owe to the State the collateral inheritance

tax of two and one-half per cent. imposed by *sec.* 102, *of Art.* 81 *of the Code of* 1888. Suit was brought by the State against the appellees for the recovery of this tax. To the declaration, which sets forth in detail the facts we have just outlined, the appellees demurred, and the Court of Common Pleas of Baltimore sustained the demurrer and entered judgment thereon against the State. From that judgment this appeal has been taken.

The statute imposing this tax is in these words: "All estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, *being in this State,* * * * * * * to any person or persons, bodies politic or corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor * * * shall be subject to a tax of two and a half per centum on every hundred dollars of the clear value of such estate, money or securities * * * *."

It has been settled by this Court in *Tyson, et al. vs. State,* 28 *Md.,* 577, that such a tax is free from any constitutional objection. There can be no doubt that the Legislature has the power to impose it, not only where it affects citizens of the State, but also where non-residents or aliens claim by inheritance or by will property located here. Every State in the Union, in the absence of a constitutional prohibition, has the authority to regulate by law the devolution and the distribution of an *intestate's property* situated within the jurisdiction of that State, and personal property situated elsewhere but owned by a resident, and to prescribe who shall and who shall not be capable of taking it. It seems scarcely necessary to cite authorities in support of these indisputable propositions, but we refer

to *Mager vs. Grima*, 8 *How.*, 490, and *Eyre vs. Jacob*, 14 *Gratt.*, 422. We may add that our statutes abolishing primogeniture and directing the descent of real estate, and those regulating the distribution of personal property, and respectively designating who shall inherit the one and who shall take the other, and former enactments now repealed, prohibiting aliens from acquiring property in this State, except upon compliance with the conditions imposed, are instances of the exercise of the same power.

Possessing, then, the plenary power indicated, it necessarily follows that the State in allowing property actually located here, or personal property situated elsewhere but owned by a resident, to be disposed of by will, and in designating who shall take such property where there is no will, may prescribe such conditions, not in conflict with or forbidden by the organic law, as the Legislature may deem expedient. These conditions, subject to the limitation named, are, consequently, wholly within the discretion of the General Assembly. The Act we are now considering plainly intended to require that a person taking the benefit of a civil right secured to him under our laws should pay a certain premium for its enjoyment. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is, that there shall be paid out of such property a tax of two and a half per cent. into the treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated, to be transmitted by will or by descent or distribution.

That this is so, is abundantly clear from the language of the statute and its several provisions. The whole contention of the appellees is, that the words

used in the Act of Assembly, viz., "being in this State" refer to the decedent and not to the property. If it be true that they do refer to the *person*, the tax is not collectible because William H. Dalrymple was a citizen of California, was domiciled there and died there. If, on the other hand, they apply to the *property*, the tax is collectible because the property is actually within this State, and was so at the time of William H. Dalrymple's death. A careful examination of the several sections of *Art.* 81 of the Code, relating to this subject, has brought us to the conclusion that the tax is payable out of the estate of a deceased non-resident when property owned by him is actually within this State; and that it is payable out of the estate of a deceased resident when his property is actually, or in legal contemplation, situated here; provided, of course, in both instances the property passes to a person other than the father, mother, husband, wife, children or lineal descendants of the decedent. We have already quoted from *sec.* 102. *Sec.* 103, makes it the duty of an executor or administrator before he pays any legacy or distributes the shares of an estate liable to the tax, to pay this tax to the register of wills of the proper county. By *sec.* 104 unless he pays this tax within thirteen months from the date of administration his letters are forfeited. *Secs.* 106 to and including 114, relate to the appraisement of real estate subject to the tax, and provide the manner and appoint the time of collecting and enforcing it. *Sec.* 120, declares that where any estate, real, personal or mixed shall be subject to the tax and no administration is taken out on the estate of the person who died seized and possessed thereof, within ninety days after the death of such person, the Orphans' Court of the county where such administration should be granted shall issue a summons to the parties entitled to administer, to show

cause wherefore they do not administer. *Sec.* 121
provides that if the parties entitled to administer do
not administer within a reasonable time, or if they be
incapable, or being capable, if they decline or refuse to
appear on proper summons and notice, administration
may be granted to such person as the Court may deem
proper.

It is thus quite apparent that the whole scheme of
the law looks to and contemplates the collection of the
tax through an executor or administrator exercising
authority under the laws of this State, and answerable
to those laws for the faithful performance of his duties.
Ample provision is made for every possible contingency
that may arise, whether the decedent be a resident of
this State or not, provided the property be located
here if he be a non-resident, or be actually or con-
structively here, if he be a resident. No estate can
escape administration if the law be enforced, and when
the property passes into the hands of the executor or
administrator his obligation to pay the tax is fixed and
his bond at once becomes liable therefor.

The tax, we have said, is on the *transmission* of the
property "being in the State," and no reason has been
assigned or can be suggested why the broad language
of the statute and the evident design of the Legislature
should be so narrowed and restricted as to exempt from
this tax the property of a non-resident actually here,
notwithstanding that same property may, for other
purposes, be treated as constructively elsewhere. If
we adopt the view insisted on by the appellees it would
result in a discrimination in favor of the non-resident
and against our own citizens, a discrimination, too,
which the Legislature certainly never intended to
make, and for which no warrant whatever can be found
in the plain letter of the statute. In permitting pro-
perty within the State, upon the death of its owner, to

pass by devise or descent or distribution, the Legisla-
ture has seen fit, where strangers or collateral kindred
receive it, to exact, as the condition upon which that
privilege is granted, the tax in question.   The imposi-
tion and collection of the tax cannot, therefore, depend
upon the mere accidental residence of the owner.

The Supreme Court of Pennsylvania, in construing a
very similar statute of that State held, that the words
"being within this Commonwealth" had reference to
the property and not to the person of the decedent.
*Comomnwealth vs. Smith*, 5 *Pa. St.*, 142; *In re Short's
Estate*, 16 *Pa. St.*, 63.   It is true in *Smith's* case the
Court held the tax to be a tax on the property within
the State; and the result of that construction (as
stated by Chief Justice GIBSON in *Short's* case) was,
that personal property actually beyond the State,
though owned by a resident of the State, would have
escaped the tax had not a subsequent statute expressly
made it liable.   We cite these cases merely to show
that the words "being in this State" have not in a
similar statute been considered as referring to the
person of the decedent.

The case of *Citizens Nat. Bank vs. Sharp, Adm'r*, 53
*Md.* 521, relied on by the learned Judge of the Court
of Common Pleas, is distinguishable from the one at
bar.   The question involved there, as stated by the
late C. J. BARTOL, who delivered the opinion of this
Court, was, "what is the effect of a voluntary payment
by a debtor in this State to the executor or adminis-
trator of his creditor, appointed in another State in
which the creditor had his domicile at the time of his
death, where such payment has been made before any
administration has been granted in Maryland; and is
such payment a bar to the claim of the domestic
administrator afterwards appointed?"   And it was
held that a payment so made was a complete discharge

of the debt, and that the validity of the payment did not in any manner depend upon the fact of the non-existence of debts against the deceased in this State. Having thus decided the only question involved in the cause, the opinion proceeded to state that "if the question of the existence of debts in Maryland were important, it does not appear that there are any debts here to pay for which the funds in dispute are liable. * * * * No collateral inheritance tax thereon is payable in this State." The domestic administrator never received the money and no demand was made upon him by the State for the payment of the tax. The liability of the estate of the non-resident testatrix to pay the collateral inheritance tax was therefore not involved in *Sharp's* case in any way, and could not, and did not influence or control the determination of the only question which was before the Court on that appeal. In the case now before us the property is in the hands of the Maryland administrators under the laws of this State. Those laws have been invoked to enable them to receive it and their bond, under the express terms of the statute, is liable for the payment of the tax. *Orcutt's Appeal*, 97 *Pa. St.*, 179, is not analogous to the case before us. There a resident of New Jersey had deposited with a Philadelphia trust company, for safe-keeping, certain United States bonds. He died in New Jersey, where administration on his estate was duly granted. The trust company declined to surrender these bonds to the New Jersey executor unless ancillary letters should be taken out in Pennsylvania. These letters were accordingly taken out, the bonds were received from the trust company and being over-due were collected; and thereupon the collateral inheritance tax was demanded and the Orphans' Court of Philadelphia directed it to be paid. This order was reversed upon appeal. It is obvious the bonds had no

*situs* different from the domicile of their owner. They were "simply evidences of indebtedness, not by any person or corporation within the Commonwealth, but by the general government  *   *   *   *.  The testator intrusted the bonds temporarily, for safe-keeping, to the Fidelity Company, but they were constructively at least, in his possession at the time of his decease." In the case at bar the property is actually in this State. It belonged to Edwin A. Dalrymple, who was, at the time of his death, a resident of Maryland. Upon his decease his brother William became entitled to it. It is still here in Maryland and the larger portion of it is invested in the very same stocks and securities which Edwin held in his life-time.

We have no difficulty in distinguishing between this and the English cases. In those cases the several Acts of Parliament imposing probate, legacy and succession duties underwent construction. In England the question of probate duty depends upon the *situs* of the property and not the domicile of the owner. *Attorney-General vs. Hope*, 1 *Cromp., Mes. & Ros.*, 530. It was for some time held that the legacy duty imposed by 36 *Geo. III, ch.* 52, and 48 *Geo. III, ch.* 149, depended upon the same consideration. *Attorney-General vs. Cockerill*, 1 *Price*, 165; *Same vs. Beatson*, 7 *Price*, 560. But these cases were overruled in *Thomson vs. Advocate-General*, 12 *Clark & Fin.*, 1; and the principle was settled that the law of the domicile of the owner of personal property determines its liability to legacy duty. The same rule was adopted in respect to the succession duty under 16 & 17 *Vic., ch.* 51. *Wallace vs. Attorney-General, L. R.*, 1 *Ch. App. C.*, 1. In the case last referred to, Lord Chancellor CRANWORTH said, "Parliament has, no doubt, the power of taxing the succession of foreigners to their personal property in this country; but I can hardly think we ought to pre-

sume such an intention unless it is clearly stated.'' Thus whilst the power of Parliament to impose the tax without reference at all to the subject of domicile is distinctly recognized; it was held that the language of the Acts did not furnish any indication of an intention to exercise that power, and that, therefore, the law of the domicile of the owner fixed the liability of his property to pay these taxes. In our opinion, for the reasons we have given, the Maryland statute cannot be so construed.

It results from what we have said, that the tax is payable in this case, and the amount of the tax will depend upon the sum in the hands of the appellees payable to the legatee.

The judgment of the Court of Common Pleas must therefore be reversed, and a new trial will be awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 1st March, 1889.)