# WASHINGTON COUNTY HOSPITAL ASSOCIATION

*vs.*

# ESTATE OF EDWARD W. MEALEY, Deceased.

## And

# WASHINGTON COUNTY FREE LIBRARY

*vs.*

# SAME.

*Taxation : collateral inheritance tax; not a tax on property;
corporations exempt from taxation.*
*Charters : revocable.*

The collateral inheritance tax is not a tax on the property,
but a tax on the privilege of succeeding to the inheritance or
becoming a beneficiary under the will.                    p. 280

The provision in the charter of a corporation exempting from
taxation its real and personal property, is not an exemption
from liability for payment of the collateral inheritance tax.

pp. 280, 281

The charters of the Washington County Hospital Associa-
tion and the Washington County Free Library do not exempt
them from liability for the payment of the collateral inheritance
tax imposed by section 120 of Article 81 of the Code.    p. 281

All charters granted since the Constitution of 1851, Article
3, section 47, are subject to be repealed or altered even though
such right is not reserved in the charter itself.         p. 282

*Decided June 25th, 1913.*

Two appeals from the Orphans' Court for Washington
County.

The facts are stated in the opinion of the Court.

The two causes were argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Frank G. Wagaman,* for the Washington County Hospital Association, appellant.

*Charles A. Little,* for the Washington County Free Library, appellant.

*Edgar Allan Poe,* the Attorney-General (by the consent of the Court), for the State.

BOYD, C. J., delivered the opinion of the Court.

The question submitted for our determination in this case and that of the *Washington County Free Library* v. *Estate of Edward W. Mealey, deceased,* is whether the residue of the estate which was left to the appellants in the two cases by the last will and testament of Edward W. Mealey, deceased, is subject to the collateral inheritance tax imposed by section 120 of Article 81 of the Code of 1912. After making certain other bequests not involved in this controversy, the testator by the seventh clause of his will left all the rest, residue and remainder of his estate to the Hagerstown Trust Company of Hagerstown, Maryland, trustee, "to hold the same and collect the income therefrom, and pay over the net amount thereof to my wife, Adelaide Savage Mealey in semi-annual instalments, and upon her death I direct that the whole corpus or principal of the trust estate held under this clause of my will be passed over and delivered by my said trustee as follows: two-thirds thereof to the Washington County Hospital Association, a body corporate, duly incorporated under the laws of the State of Maryland; and the remaining one-third thereof to the Washington County Free Library, a body corporate, duly incorporated under the laws of the State of Maryland."

On the 24th of January, 1913, there was stated what is designated as the "Restatement of the First and Final Account of the Hagerstown Trust Company, Executor of Edward W. Mealey," in which account there was shown to be a balance due the estate, after the payment of all costs,

expenses, commissions, debts, specific legacies and the collateral inheritance tax on certain of said specific legacies, of the sum of.............................. $398,804.99

From which balance is deducted the sum of $19,940.24, being 5% collateral inheritance tax on the above balance,...............    19,940.24

Leaving a balance of..............  $378,864.75

That was distributed to the Hagerstown Trust Company of Hagerstown, Maryland, trustee, under the 7th clause of the will of the testator. That account was on the same day approved and ordered to be recorded by the Orphans' Court of Washington County. By agreement of counsel the account is not inserted in full in the record, but the above shows the balance due the estate by the executor, the amount of the collateral inheritance tax charged and the amount distributed to the trustee.

On February 25th, 1913, the appellants in the two cases each filed a petition in the Orphans' Court, objecting and excepting to the restatement of the account and to the order passed by the Court which affirmed and ratified the account. The petitions set out in full the charters of the respective corporations, refer to the will of the testator, quote the 7th clause in full, and each claims that it is exempt from the payment of all taxes, including the collateral inheritance tax, under the provisions of its charter. Each petitioner prays the Court to pass an order revoking, annulling and setting aside the order passed on the 24th of January, 1913, approving, confirming and ratifying the said account, also annulling and setting aside the account as stated and authorizing and directing the executor to state an account wherein shall be distributed to the trustee the entire balance of $398,-804.99, without deducting therefrom the collateral inheritance tax of $19,940.24, or any portion thereof. The executor filed an answer to each petition, admitting the allegations of the petition, alleging that it had no interest in the distribution of the collateral inheritance tax, and submitting

all questions raised by the petition to the immediate adjudication of the Court. The State's Attorney for Washington County answered each petition for the State and alleged that the petitioner was not exempt from the payment of the collateral inheritance tax. The Court on February 28th, 1913, passed orders dismissing the petitions of the respective corporations and each of them appealed. The Attorney General appeared for the State and each appellant was represented by counsel at the argument in this Court—the two cases being heard together.

There is no material difference between the two charters, in so far as this question is concerned. In that of the Hospital Association it is provided amongst other things that it "shall be capable of acquiring, purchasing and taking by gift, grant, devise or bequest or otherwise, in trust or in perpetuity, and of holding real and personal estate and property for the use and purposes of said corporation." By section 7 it is enacted: "That the real and personal estate authorized by this Act to be held by the said 'The Washington County Hospital Association' for the uses and purposes herein provided for, shall be exempt from all state, county and municipal taxes so long as the same shall be used for the purposes herein mentioned."

The Free Library is authorized to purchase, acquire and hold all real estate necessary for the purposes of the library; to receive by gift, grant, devise, bequest or otherwise, all lands necessary as a site for said library and also all moneys, funds or other property for the erection thereon of proper and suitable buildings for library purposes; and also to receive all moneys, funds or other property donated to it," and to apply the same or the annual proceeds thereof to the maintenance and support of said library, to the acquisition or purchase of books and all other things or property necessary for the proper equipment and maintenance of a free public library, according to the intent and directions of any donor or donors." Section 6 provides, "That the real and personal estate authorized by this Act to be held by the said 'The

Washington County Free Library' for the uses and puropses herein provided for, shall be exempt from all state, county and municipal taxes forever."

Mrs. Mealey had died before the account was stated, and as we understand that no question was intended to be raised or desired to be determined by us, excepting as to the alleged exemption from the payment of the collateral inheritance tax, we will confine our discussion to that. Section 120 of Article 81 provides that: "All estates, real, personal and mixed, money, public and private securities for money of every kind passing from any person who may die seized and possessed thereof, being in this State, or any part of such estate or estates, money or securities, or interest therein, transferred by deed, will, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor, to any person or persons, bodies politic or corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, bargainor or testator, donor or intestate, shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate, money or securities." There are numerous provisions in the following sections for the ascertainment of values, the collections, etc., of this tax which need not be referred to, further than to say that they manifest great concern on the part of the Legislature to secure to the State the collection of this tax.

We find nothing in these charters which indicates an intention to exempt either of the corporations from the effects of the broad provisions of the statute quoted above. In the first place, as both of them are corporations of a character which would at least hope to receive property by devise or bequest, or in some way to take effect after the death of the benefactor, and as both in terms provided for devises and bequests and as both were created by special charters which were intended to give them broad powers and privileges, the mere fact that no such provision was made in the charters, or

either of them, would of itself strongly indicate that the intention of the Legislature was that this tax should be paid—especially as each of them has a provision for an exemption from all state, county and municipal taxes *on the real and personal estate* authorized by the charters to be held by them. Indeed in the charter of the Hospital Association the exemption is in terms limited to "so long as the same shall be used for the purposes herein mentioned," which indicates that it was speaking of the kind of taxes imposed from time to time for state, county and municipal purposes and not of such a tax as the collateral inheritance tax.

When these corporations were chartered the General Corporation Laws of the State provided specifically for the creation and maintenance of hospitals and libraries (Article 23, sections 15 and 16 of Code of 1904), and section 4 of Article 81 of that Code exempted from taxation the buildings, equipments and furniture of hospitals, asylums, charitable and benevolent institutions, and the grounds appurtenant thereto which are necessary to the respective uses thereof, and the buildings, furniture, equipment and libraries of incorporated educational or literary institutions and to the ground appurtenant thereto, but it could not have been successfully contended that such exemptions included the collateral inheritance tax on any property left to such corporations. In 37 *Cyc.* 1572, in the consideration of "Legacy and Inheritance Taxes," it is said: "A legacy to a charitable, educational or religious institution is not exempt from taxation merely because the property of the institution is exempt from general taxes." A number of cases are cited in the notes. See also 27 *Am. & Eng. Ency, of Law,* 350, where it is said, under a discussion of "Exempt Succesion" that, "Express exemptions are found in the statutes of some jurisdictions in favor of religious, charitable or educational institutions, incorporated under the laws of the taxing State. In the absence of such express provision, however, a bequest can not escape taxation because for a charitable use."

But in order to see that such exemptions as these charters provide for do not include the collateral inheritance tax, it is only necessary to keep in mind the kind of a tax the latter is. In *State v. Dalrymple,* 70 Md. 294, JUDGE MCSHERRY said: "Every State in the Union, in the absence of a constitutional prohibition, has the authority to regulate by law the devolution and the distribution of an intestate's property situated within the jurisdiction of that State, and personal property situated elsewhere but owned by a resident, and to prescribe who shall and who shall not be capable of taking it," and, after speaking of instances of the exercise of the power, went on to say: "Possessing, then, the plenary power indicated, it necessarily follows that the State in allowing property actually located here, or personal property situated elsewhere but owned by a resident, to be disposed of by will, and in designating who shall take such property where there is no will, may prescribe such conditions, not in conflict with or forbidden by the organic law, as the Legislature may deem expedient * * *. In other words, one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is, that there shall be paid out of such property a tax of two and a half per cent. into the Treasury of the State. This, therefore, is not a tax upon the property itself, but is merely the price exacted by the State for the privilege accorded in permitting property so situated to be transmitted by will or by descent or distribution." The statute then in force provided for a tax of two and a half per cent., but it has since been increased to five per cent. Those principles were again announced by JUDGE BRISCOE in *Fisher, Trustee, v. State,* 106 Md. 104.

It is thoroughly settled that it is not a tax on the property but on the privilege of succeeding to the inheritance or of becoming a beneficiary under the will. 37 *Cyc.* 1553; 27 *Am. & Eng. Ency. of Law,* 338, and Maryland cases cited above. That being so, it cannot be said that the exemption

of *the real and personal* estate, authorized by these charters
to be held by the respective corporations, from all state,
county and municipal taxes is an exemption from this tax.
Many authorities might be cited to show that although certain
property can not be taxed, or the owners are not liable to
taxation, such a tax as this can be imposed on the transmis-
sion of the property exempt from taxation, or passing to
those not liable to taxation. In *United States v. Perkins,*
163 U. S. 625, the Supreme Court held that personal prop-
erty bequeathed to the United States was subject to an inher-
itance tax under the laws of New York, and quoted with
approval from *State* v. *Dalrymple, supra.* The Court said,
"That the Act in question is not open to the objection that
it is an attempt to tax the property of the United States,
since the tax is imposed upon the legacy before it reaches
the hands of the government. The legacy becomes the prop-
erty of the United States only after it has suffered a diminu-
tion to the amount of the tax, and it is only upon this con-
dition that the Legislature assents to a bequest to it." In
*Plummer* v. *Color,* 178 U. S. 115, the Court held that such a
tax could be imposed on the transfer of United States bonds,
although of course they were not within the ordinary taxing
power of the State. In *Orr* v. *Gilman,* 183 U. S. 288, trans-
fers of State and municipal bonds, exempt from taxation by
statute, were held to be subject to the tax imposed by the
succession tax laws, as United States securities are. In the
note to *Succession of Levy,* 115 La. 377, as reported in 5
*A. & E. An. Cas.* 871, many cases are cited to the same
effect. See also, 37 *Cyc.* 1554, and 27 *Am. & Eng. Ency.*
*of Law,* 344.

We might assign other reasons for the conclusion we have
reached but deem it unnecessary to do so, and are of the
opinion that there is nothing in the charters of these corpora-
tions, or either of them, which could authorize an exemption
from the collateral inheritance tax imposed by section 120
of Article 81, and the Orphans' Court was right in requir-
ing it to be paid.

We will only add that we do not understand how it can be contended, in view of the provisions in the State Constitution and the decisions of this Court, "that there being no power reserved in the Legislature to repeal or amend the appellant's charter, a subsequent change in the statute law of the State cannot affect the appellant's rights under its charter,"—referring to the change in the statute as to the rate of the tax on collateral inheritances, it having been two and a half per cent. when its charter was passed, and claiming that if liable to any such tax, it could only be two and a half per centum. All charters granted in this State since the Constitution of 1851 (Article 3, section 47), including of course those granted since the present Constitution was adopted, are subject to be repealed or altered, and it matters not that such right is not reserved in the charter itself. *State* v. *Northern Central Railway Company,* 44 Md. 165; *State* v. *Same,* 90 Md. 447, and other cases might be cited. The right reserved in the Constitution to repeal or alter a charter of a corporation is read into the charter as effectually as if made in express terms in it. "To hold otherwise would be to decide that the Legislature by omitting such a reservation could confer a power beyond the interference of the Legislature, and thus exercise a power forbidden by the Constitution." 44 Md. 165. In the case in 90 Md., *supra,* this Court held that a general law passed in 1890 (Acts 1890, Ch. 559) imposing a tax of one per centum on the gross receipts of all railroad companies, operated as a repeal by implication of Chapter 16, Acts of 1880 which imposed a lesser tax on the Northern Central Railway Co. The question is too thoroughly and clearly settled to require further discussion of it.

*Order affirmed, the appellant to pay the costs.*