# SALLIE L. WALKER

## *vs.*

# THE WASHINGTON GROVE ASSOCIATION.

*Leases: redemption; Code, section 92, Article 21, and section
24, Article 53; not applicable where rent uncer-
tain; camp-meeting rentals.*

Chapter 485 of the Acts of 1884 (included in section 92 of
Article 21, and section 24 of Article 53 of the Code), relating
to the redemption of leases, were passed for the purpose of
breaking up long, irredeemable leases, rather than for any spe-
cial consideration for the lessees.                        p. 568

The Act is remedial in its character, and is to be liberally
construed, so as to advance the remedy and suppress or prevent
the mischief against which it was directed.                p. 568

While the statute was passed more particularly with refer-
ence to Baltimore City, it is by its terms applicable to the whole
State.                                                     p. 568

But the statute has no application to the lots of a Camp Meet-
ing Association, which are leased for rentals of indefinite and
variable value, which do not admit of exact capitalization, ac-
cording to the terms of the Act.                           p. 569

*Decided January 14th, 1916.*

Appeal from the Circuit Court for Montgomery County.
In Equity.   (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE,
THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert B. Peter* (with whom was *Robert H. Walker* on
the brief), for the appellant.

*L. Cabell Williamson* (with whom were *John Ridout* and
*Frank Higgins* on the brief), for the appellee.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing a bill in equity filed by the appellant against the appellee to require the latter to execute and deliver unto the former a deed of the reversion in fee in the lot of ground described, under the provisions of Article 21, section 92 of the Code. The appellee was originally incorporated under the Act of 1874, Chapter 135, by the name of the "Washington Grove Camp-Meeting Association of the District of Columbia and Maryland." The name was changed by Chapter 467 of the Acts of 1908 by striking out "Camp-Meeting." On the 6th of October, 1886, the appellee leased unto John N. Bovee a lot "known and designated as Lot 23, Grove Ave., on the map of the cottage department of the ground belonging to the said association, known as Washington Grove," for the term of ninety-nine years, renewable on the same conditions for like term of years forever, "paying for said demised premises to the said association, their successors or assigns, annually, such sum of money not to exceed six per cent., per annum of the par value of said five shares of stock as may be from time to time assessed by the said association, their successors or assigns, subject, however, nevertheless and this lease is granted and accepted according to such regulations as have been, (or) which shall at any time hereafter be adopted, for the government of said camp-meeting grounds, and which are made part of this indenture as fully and to all intents and purposes as if they were incorporated herein."

The preamble of the leases is: "Whereas, John N. Bovee, of Washington, D. C., being the owner of five shares of the capital stock of the 'Washington Grove Camp-Meeting Association of the District of Columbia and Maryland,' is entitled to have one of the lots or parcels of ground situate in the cottage department of the grounds belonging to said association." The consideration mentioned is one dollar and "the waiver and release by him of all rights and claims in and to any and all dividend or dividends, gain or gains which may hereafter, so long as this indenture shall remain in full

force and value, accrue and be due and payable on the said five shares of stock, as well as in consideration of the covenants and promises of the said John N. Bovee hereinafter contained," etc. He covenanted to waive and relinquish the dividends and gains accruing to the five shares of stock and "to pay any assessments hereinbefore provided within 30 days after notice of the same shall have been given." He also covenanted as to the use of the property and not at any time during the term to "give, demise, let or assign, or in any manner dispose of the hereby demised premises, or any part thereof, for all or any part of the term hereby granted, to any person or persons, without the consent in writing of the said association, or their successors or assigns, first had and obtained." Upon neglect or refusal to pay any assessment, or to perform the covenants, it was made lawful for the association, their successors and assigns, to enter upon the premises and at the option of the association the lease was to be "null and void and the estate hereby granted, cease and absolutely determine."

The association gave its consent to the assignment of the lease first to Christiana B. Schively, and then by her to the appellant. The answer denies that the indenture is a lease, and alleges that the respondent had no power to make such a lease, etc.; but we will not discuss those questions and will treat it as a lease. The appellee also contends that the Act of 1884, Chapter 485 (now included in section 92 of Article 21 and also section 24 of Article 53), if applicable to this lease, would be inoperative, because it would have the effect of impairing the obligation of the contract created by the Act of 1874—its charter. It is only necessary to refer to *Washington Hospital* v. *Mealey,* 121 Md. 274, in which, on page 282, some prior cases on the subject are cited, as that case sufficiently answers the contention. The only point in this case which requires our consideration is the one which was decided by the learned Judge in the Circuit Court—whether the lease is subject to the Act of 1884. It was made in 1886, and hence after the Act of 1884 was passed, and

before the Act of 1888, Chapter 395. We are therefore only called upon to consider the Act of 1884, which was in effect when the lease was made. At that time there was a by-law in force which provided that

> "Hereafter title to selected lots shall be by lease, for a period of ninety-nine years, subject to conditions imposed by these by-laws, or which may hereafter be imposed by such by-laws of the Association as are in force when said lease is executed; and no condition shall be imposed having a retrospective effect."

In the stipulation of facts filed it is stated:

> "That whenever a stockholder who had located by his certificate, and prior to November 20, 1905, requested the Board of Trustees or directors to issue papers similar to the paper purporting to be a lease filed with the bill, on said lots in connection with said certificate of stock, such papers were issued, and at all times whenever the stockholder sold his stock and lot and the purchaser was accepted by the Board of Trustees, new stock was issued to the purchaser, and located on the same lot, and if the paper purporting to be a lease had already been granted, and the request was made for that purpose, the trustees would consent to its transfer or assignment to the new holder. No papers purporting to be leases were issued after the revision of the by-laws on April 12th, 1907. None of the papers purporting to be leases were issued to any one, except they were stockholders and had located their stock on the particular lot or lots."

The Court below held that the lease was not subject to the Act of 1884 by reason of the indefiniteness of the amount to be paid, but the appellant contends that inasmuch as she offered to pay the highest amount of assessments that could be assessed, she is entitled to a deed.

We fully appreciate the importance of the legislation which is now embraced in the two sections referred to—the begin-

ning of which was the Act of 1884. JUDGE STONE, in *Stewart* v. *Gorter,* 70 Md. 242, said, that the legislation "was the result of a well grounded belief that these long leases, with their covenants of renewal, were injurious to the prosperity of the City of Baltimore, and that sound public policy demanded that all leases hereafter made, if for more than fifteen years, might be ended at the option of the tenant or lessee, upon paying the capitalization of his ground rent, at six per centum. It was the system of these long leases, irredeemable until the end of the term, that the Legislature wished to break up, rather than for any special consideration for the lessees, that caused the Act." It has been held by us that the legislation was remedial in its character, and is "to be liberally construed so, as to advance the remedy and suppress or prevent the mischief against which it is directed." *Swan* v. *Kemp,* 97 Md. 686. The subject has been before us as late as in the case of *Brager* v. *Bigham et al.,* 127 Md. 148, where we held that the statute was applicable, but none of the cases seem to us to meet the conditions we now have before us. While the statute was doubtless passed more particularly to correct the injury to property in Baltimore, it was made applicable to the whole State, but although that is true, it may well be questioned whether the Legislature ever intended it to apply to leases made by a corporation of this character exclusively to its stockholders. In order to induce persons to become stockholders, and aid in making improvements on the property but still permit the association to have some control over it, it was necessary to adopt some plan different from what would be done in ordinary business corporations, and the plan of executing these leases was the one selected. That was before the Act of 1884 had been passed, and it may well be doubted whether a single stockholder had any idea that that Act would be applicable to leases made by the association after 1884 until sometime about 1893 when the question was raised, as shown by the stipulation of facts.

It is unquestionably true, as Judge Peter said in his opinion below, that the amount of rent, if we call it such, reserved in the lease is altogether indefinite. There may be no assessment, and hence no rent to be capitalized, or it may vary anywhere from nothing to six per cent. on the par value of the stock. It is said on the part of the appellant that she offered the largest amount that could be assessed, and hence the indefiniteness of the amount is immaterial, but if no rent had been reserved, could the appellant have become entitled to a deed in fee by offering the par value of the stock or other sum? We think not, because the capitalization of nothing is still nothing. If the rent (treating the assessment as rent) is one dollar a year, then the capitalization at six per cent., would be sixteen dollars and sixty-six and two-thirds cents, if two dollars, twice that amount, and so on. The statute does not say it may be capitalized at the highest rent that can be charged, but for a sum equal to the capitalization *of the rent reserved* at the rate of six per centum, unless some other sum not exceeding four per cent. capitalization of said rent be specified in the lease—assuming that there would be a definite rent specified. There is no such reason for authorizing the redemption of such an instrument as this, as has been given by this Court, as the cause of the passage of the statute.

But beyond what we have said, this lease was not made only in consideration of the lessee paying "such sum of money not to exceed six per cent. per annum of the par value of said five shares of stock as may be from time to time assessed," but a part of the consideration was that the lessee waived and released "all rights and claims in and to any and all dividend or dividends, gain or gains, which may hereafter, *so long as this indenture shall remain in full force and value,* accrue and be due and payable on the said five shares of stock, as well as in consideration of the covenants and promises of the said John N. Bovee, hereinafter contained." If therefore it be conceded that the owner of the leasehold estate tendered payment of the capitalization of the highest

amount she could be assessed for, which was six dollars per annum, the capitalization of which at six per cent. is one hundred dollars, what is to be said of the release of the dividends or other gains that may accrue? The lessee only released such as accrue and are due and payable "so long as this indenture shall remain in full force and value," and hence if this indenture ceased to be in force, the provision for the release of dividends, etc., would cease. It would be impossible to ascertain, and capitalize the amount of such dividends or gains, yet they are as much *rent* within the meaning of this instrument as the assessments. If it be said that there may be no dividends or gains, we reply, as we said in reference to the assessments, then they could not be capitalized, but if there are, no one has said what they were in the past, and no one can say what they will be in the future. They may be far beyond the value of this lot, as fixed by the tender of the appellant. It is true that the charter seems to limit the dividends to six per cent. per annum on the stock, but the stockholders have an interest in the lands and improvements purchased and built, and in the event of the dissolution of the corporation there may be large accumulations to which they may be entitled. Moreover, whatever the value of the waiver and release may be, it was not included in the tender.

It can not be contended that it was ever intended that the Association should surrender its entire ownership and control of the lots in the cottage department, where this lot is. The stipulation of facts shows that it pays the State and County taxes on the lots, and the leaseholders pay them on the improvements. There is no covenant or agreement by the lessee to pay the taxes on the ground included in the lease, as is the custom in ordinary leases for ninety-nine years, and these leases were only made to stockholders who had located their stock on the particular lot or lots. Of course we do not mean to say that the agreement or understanding of the parties could prevent a redemption, if other-

wise entitled to it, for it was settled in *Stewart* v. *Gorter, supra,* that the tenant could not be estopped by any covenant, however strongly worded, from claiming the right to redeem under the statute, but we refer to the above facts to show that our construction of the instrument does not do any injustice to the lessees or those claiming under them, and the circumstances tend to support our construction of the instrument.

We have not felt called upon to decide anything except whether the appellant is entitled to redeem, and confining ourselves to that, without determining whether the Association has in any way exceeded its powers, or whether there could be any legal objection to the form of the lease, or any portion of it, we hold that it is not subject to the Act of 1884, Chapter 485, and will therefore affirm the decree of the lower Court.

We have no fear of the suggested injurious effect on the statutes on the subject of redemption of leases, by the conclusion we have reached. It is not at all probable that such a plan as this Association adopted will be followed for the purpose of evading them. People do not generally seek to evade statutes except for purposes of gain, and we think there is no danger of leases being made for such purposes, with reservations of rents so indefinite that it can not be told how much they can be capitalized at. But if there is such danger, the Legislature can provide for it by prohibiting such leases, or authorizing redemption of them in some definite way. So far, the Legislature has not prohibited leases for 99 years, renewable forever, but has only provided for the redemption of such as come within the several statutes which have been passed on the subject.

*Decree affirmed, the appellant to pay the costs.*