845 A.2d 1231

**Raina COOK, et al.**

v.

**Deborah GRIERSON.**

**No. 79, Sept. Term, 2003.**

Court of Appeals of Maryland.

April 6, 2004.

John Noble (Alexander J. Crow, Noble and Crow, P.A., on brief), Rockville, for appellants.

Daniel J. Mellin (Hillman, Brown & Darrow, P.A., on brief), Annapolis, for appellee.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

In this case we are asked to interpret the Slayer's Rule so as to allow for the grandchildren of a murdered victim to inherit from him (the victim having died intestate), notwith-

standing the fact that the grandchildren's father (the victim's son) was the murderer and is still alive. We recognize, by our previous construction of the rule, that persons who are the natural object of the slayer's bounty are disqualified from taking directly from the victim's estate as well as through the slayer's estate. Because the slayer never acquired a beneficial interest in the victim's estate, anyone claiming through the slayer, even though innocent of any wrong doing, may not share in the victim's estate. The overarching policy to prevent the undeserving slayer from controlling the disposition of the victim's property should not be changed by judicial fiat.[1] If there is to be any change in the laws of intestate succession, the General Assembly should make that change.

## I

The facts of this case are not in dispute. On January 22, 2002, Frederick Charles Grierson, Jr. ("Frederick"), died as a result of multiple stab wounds inflicted by his son, Charles Grierson ("Charles"). He died intestate, survived by Charles, three grandchildren, and his widow, Deborah Grierson.[2] Charles pled guilty to second degree murder and is serving a thirty-year prison sentence.

On May 1, 2002, Deborah Grierson, as personal representative of the estate, filed a notice of disinheritance in the Orphans' Court for Anne Arundel County contending that, under Maryland's Slayer's Rule, Charles Grierson should not share in the estate of his father. On November 14, 2002, the grandchildren, through their mothers, petitioned the Orphans' Court to declare their right to inherit from the intestate decedent. The Orphans' Court denied the grandchildren's

---

1. See Mary Louise Fellows, *The Slayer Rule: Not Solely a Matter of Equity*, 71 Iowa L.Rev. 489, 495–96 (1986) (discussing the moral and property grounds used to justify the Slayer's Rule).

2. Charles never married the mothers of the three children and paternity, as far as the record reveals, has not been established scientifically or by judicial order. For the purposes of this appeal, however, the parties ask that we treat Charles as the father of the three children.

right to inherit, and that decision was affirmed by the Circuit Court for Anne Arundel County. Appellants noted an appeal. We granted *certiorari* prior to proceedings in the Court of Special Appeals. 378 Md. 176, 835 A.2d 1103 (2003).

The issue before this Court is one of first impression. The question is whether the grandchildren of a decedent may inherit from the decedent pursuant to the intestacy laws where the children's father, who is the decedent's son, could not inherit because of the Slayer's Rule. For the reasons set forth below we shall hold that pursuant to the Maryland intestate statute the children have no right to inherit from their grandfather's estate. Our statute of intestate succession specifically excludes the lineal descendants of a living lineal descendant from taking as issue of the decedent.

## II

As a threshold matter, we note that the grandchildren have standing to bring this action. *See* Md.Code (1974, 2002 Repl. Vol.), § 3–403 of the Courts and Judicial Proceedings Article (classifying an heir or next of kin or those claiming through them as individuals entitled to a declaration of rights or legal relationship with respect to the estate of a decedent.)

### The Slayer's Rule

The Slayer's Rule prevents a murderer, or anyone claiming through or under the murderer as an heir or representative, from sharing in the distribution of the victim's estate as an heir by way of statutes of descent and distribution, or as a devisee or legatee under the victim's will. *Ford v. Ford*, 307 Md. 105, 111, 512 A.2d 389, 392 (1986). The rule developed from the common law principles that equity would not permit anyone "to profit by his own fraud, to take advantage of his own wrong, to found any claim upon his own iniquity, or to acquire property by his own crime." *Price v. Hitaffer*, 164 Md. 505, 506, 165 A. 470, 470 (1933). Forty-two states have adopted "slayer statutes" that reflect the common law principles and direct the distribution of what would have

been the slayer's share of a decedent's estate.[3] Maryland is not one of those States.[4]

The seminal Maryland case in this area is *Price v. Hitaffer.* In *Price* the issue was, "Can a murderer, or his heirs and representatives through him, be enriched by taking any portion of the estate of the one murdered?" *Price,* 164 Md. at 506, 165 A. at 470. We answered the question in the negative.

---

**3.** *See, e.g.,* Ala.Code § 43–8–253 (1991)(treating the slayer as having predeceased the victim); Ariz.Rev.Stat. Ann. § 14–2803 (West 1995)(treating slayer as having disclaimed his share); Cal. Prob.Code §§ 250–258 (West 2002)(predeceased); Colo.Rev.Stat. Ann. § 15–11–803 (West 1997)(disclaimed); Conn. Gen.Stat. Ann. § 45a–447 (West 2003)(predeceased); Del.Code Ann. tit. 12, § 2322 (1995)(predeceased); D.C.Code Ann. § 19–320 (1997)(predeceased); Fla. Stat. Ann. § 732.802 (West 1995)(predeceased); Ga.Code Ann. § 53–1–5 (1997)(predeceased); Haw.Rev.Stat. § 560:2–803 (1993)(predeceased); Idaho Code § 15–2–803 (Michie 2001)(predeceased); 755 Ill. Comp. Stat. Ann. 5/2–6 (West 1992)(predeceased); Ind.Code Ann. § 29–1–2–12.1 (Michie 2000)(constructive trust or predeceased); Iowa Code Ann. § 633.535 (West 2003)(predeceased); Kan. Stat. Ann. § 59–513 (1994 & Supp.2000)(simultaneous death); Ky.Rev.Stat. Ann. § 381.280 (Michie 1972)(forfeit); La. Civ.Code Ann. art. 946 (West 2003)(predeceased); Me.Rev.Stat. Ann. tit. 18–A, § 2–803 (West 1998)(predeceased); Mich. Comp. Laws § 700.2803 (2002)(disclaimed); Minn.Stat. § 524.2–803 (2002)(predeceased); Miss.Code Ann. § 91–1–25 (1999)(predeceased); Mont.Code Ann. § 72–2–813 (2003)(disclaimed); Neb.Rev.Stat. § 30–2354 (1995)(predeceased); N.J. Stat. Ann. §§ 3B:7–1 to 7–7 (West 1983)(predeceased); N.M. Stat. Ann. §§ 45–2–803 (Michie 2001)(disclaimed); N.C. Gen.Stat. §§ 31A–3 to –11 (2003)(predeceased); N.D. Cent.Code § 30.1–10–03 (1996)(disclaimed); Ohio Rev. Code Ann. § 2105.19 (Anderson 1998)(predeceased); Okla. Stat. Ann. tit. 84, § 231 (West 1990)(other heirs of decedent); Or.Rev.Stat. §§ 112.455 to .55 (1999)(predeceased); 20 Pa. Cons.Stat. Ann. §§ 8801–8815 (West 1975)(predeceased); R.I. Gen. Laws §§ 33–1.1–1 to 33–1.1–16 (1995)(predeceased); S.C.Code Ann. § 62–2–803 (Law Coop.1987)(predeceased); S.D. Codified Laws § 29A–2–803 (Michie 2000)(disclaimed); Tenn.Code Ann. § 31–1–106 (1984)(predeceased); Utah Code Ann. § 75–2–803 (Michie 2003)(predeceased); Vt. Stat. Ann. tit. 14, § 551(6) (1989)(pass to other heirs of decedent); Va.Code Ann. §§ 55–401 to 414 (Michie 2003)(procedures in the statute); Wash. Rev.Code Ann. §§ 11.84.010 to .900 (West 2000) (procedures in the statute); W. Va.Code Ann. § 42–4–2 (Michie 1997)(predeceased); Wis. Stat. Ann. §§ 852.01, 854.14 (West 2002)(disclaimed); @Wyo. Stat. Ann. §§ 2–14–101 (Michie 2003)(other heirs of the decedent).

**4.** Other States that do not currently have slayer statutes are Arkansas, Alaska, Kentucky, Massachusetts, Missouri, Nevada, and Texas.

The Court began its discussion by recognizing that there were two schools of thought on the issue. One line of cases held that "provisions of a will and the statutes of descent and distribution should be interpreted in the light of universally recognized principles of justice and morality" embodied by the equitable principles of the common law. *Id.* The other line of cases recognized the public policy of the common law, but held that the policies were "abrogated and denied ... by the [L]egislature in the enactment of statutes to direct descents and distribution, or governing the execution and effect of testamentary disposition[ ]." *Id.* at 505–07, 165 A. at 470. Included in the second group were cases that based their conclusions on "statutory declarations to the effect that conviction of crime shall not work a corruption of blood or forfeiture of estate." *Id.*

Corruption of blood is a common law doctrine providing that " 'when any one is attainted of felony or treason, then his blood is said to be corrupt; by means whereof neither his children, nor any of his blood, can be heirs to him, or to any other ancestor, for that they ought to claim by him. And if he were noble or gentleman before, he and all his children are made thereby ignoble and ungentle.... ' " *Diep v. Rivas,* 357 Md. 668, 677, 745 A.2d 1098, 1103, n. 4 (2000) (quoting *Termes de la Ley* 125 (1st Am. ed. 1812), as quoted in Black's Law Dictionary 348 (7th ed.1999)). Article 27 of the Maryland Declaration of Rights prohibits application of the doctrine in Maryland. It provides: "[t]hat no conviction shall work corruption of blood or forfeiture of estate." In discussing the prohibition and its effect on our analysis with regard to the Slayer's Rule, the Court said:

> In the view that we take of the case, the constitutional and statutory prohibition against corruption of blood and forfeiture of estate by conviction has no application, because by reason of the murderous act the husband never acquired a beneficial interest in any part of his wife's estate. These provisions apply to the forfeiture of an estate held by the criminal at the time of the commission of the crime, or which he might thereafter become legally or equitably enti-

tled to. In other words, it is a constitutional declaration against forfeiture for a general conviction of crime. There can be no forfeiture without first having beneficial use or possession. One cannot forfeit what he never had. The surviving husband in the case before us, never having acquired any interest in his wife's estate, there is nothing upon which the constitutional or statutory prohibition can operate. By virtue of his act he is prevented from acquiring property which he would otherwise have acquired, but does not forfeit an estate which he possessed.

*Price*, 164 Md. at 508, 165 A. at 471 (internal citations omitted). Having concluded that the prohibition of corruption of blood had no application to the Slayer's Rule as we defined it, the Court held that it is inconceivable "that one be permitted by murder to acquire property through the act, which without the perpetration of the crime he might never come into possession of." *Id.* at 514, 165 A. at 473. We chose to align Maryland with the opinions that "give expression and adherence to the principles and reasoning" of the common law. *Id.* at 517, 165 A. at 474. Adherence to these principles has been reaffirmed in subsequent cases. *See Diep v. Rivas*, 357 Md. 668, 745 A.2d 1098 (2000) (holding that innocent contingent beneficiaries were not prohibited from collecting pursuant to an insurance policy despite the slayer being their brother); *Ford v. Ford*, 307 Md. 105, 512 A.2d 389 (1986) (holding that where the murderer was found not criminally responsible by way of insanity she could inherit pursuant to the deceased's will); *Schifanelli v. Wallace*, 271 Md. 177, 315 A.2d 513 (1974) (holding that where the death of the insured resulted from gross negligence on the part of the designee, the designee may collect pursuant to the policy because the killing was not intentional); *Chase v. Jenifer*, 219 Md. 564, 150 A.2d 251 (1959) (holding that where the killing is both felonious and intentional the slayer will be prohibited from receiving benefits as the beneficiary pursuant to a life insurance plan).

We summarized the status of the Slayer's Rule in Maryland in *Ford v. Ford*, 307 Md. 105, 111–112, 512 A.2d 389, 392–393 (1986). We said that in Maryland a person who intentionally

and feloniously kills another may not share in the distribution of the decedent's estate as an heir by way of statutes of descent and distribution, or as a devisee or legatee under the decedent's will, nor may the slayer collect proceeds as a beneficiary under a policy of insurance on the decedent's life. These principles also apply to anyone claiming through or under the slayer.

We discussed the "through or under" language in a case heavily relied upon by the grandchildren, *Diep v. Rivas,* 357 Md. 668, 745 A.2d 1098 (2000). *Diep* involved the contemporaneous murder of Maria Rivas and suicide of her husband and slayer, Xuang Ky Tran. Rivas's life was insured through Tran's employer's group accidental death and dismemberment policy. Upon Rivas's death the policy was to pay $150,000 to the surviving person or persons in the following list of preferential classes: the Insured's [5] (a) spouse; (b) children; (c) parents; (d) brothers and sisters; or (e) estate. The Court was asked to decide who between Tran's brother and sister or Rivas's father was entitled to the proceeds.

The Court of Special Appeals, *Diep v. Rivas,* 126 Md.App. 133, 727 A.2d 448 (1999), extended the Slayer's Rule to disqualify Tran's brother and sister and award the money to Rivas's father. The court based its decision in part on the "through or under" language used in *Price* and *Ford.* We reversed, holding that:

> Here, the facts do not fall within the "through or under" statement from *Ford.* The petitioners do not claim in the right of Tran. They claim based on the promise made by [the insurance company] to pay "the surviving person or persons in the first of the following classes of successive preference beneficiaries of which a member survives the Insured." Their claim is in their own right as contingent beneficiaries under the contract of insurance.

---

5. The policy was read by this Court to define Tran as the "Insured" rather than Rivas.

357 Md. at 680, 745 A.2d at 1104. We said that to preclude Tran's brother and sister, who were blameless in the murder, from taking under the policy "conjures up the ghosts of corruption of the blood which is prohibited by Article 27 of the Maryland Declaration of Rights." *Id.* at 677, 745 A.2d at 1103.

 The grandchildren, here, argue that they, like Tran's brother and sister, are innocent contingent beneficiaries who should be permitted to inherit from their grandfather. *Diep,* however, is distinguishable from the case at bar in that the brother and sister in *Diep* had a recognized claim to the insurance proceeds independent of Tran. The policy specifically provided that the benefits were payable to the members of the first of the classes to qualify. There is no equivalent provision in the case *sub judice.* Contrary to granting the grandchildren an independent basis for inheriting from Frederick, the intestacy statute specifically excludes them as the lineal descendants of a living lineal descendant. *See* Md.Code (1972, 2001 Repl.Vol.), § 1–209 of the Estates and Trust Article (defining "issue" as "every living lineal descendant except a lineal descendant of a living lineal descendant"). While Charles is prohibited from inheriting from his father because of his act of patricide, he is, nevertheless, still living. Consequently, the grandchildren are not "issue" within the meaning of the intestacy statute.

 The grandchildren present two alternative theories by which they would be entitled to claim an interest in Frederick's estate. The first option is that we adopt the legal fiction that the slayer predeceased the victim, thus making the grandchildren "issue" within the meaning of the intestate succession statute. The second option is that we apply the "constructive trust" theory employed by various other courts. The second basis is easily dismissed. The discussion in *Price* regarding corruption of blood makes it clear that by the act of murder the slayer never obtained an interest in the decedent's estate. With no interest existing, there is nothing to hold in trust. The remaining option advanced, that we adopt the legal

fiction that the slayer predeceased the victim, requires more attention.

Of the forty-two states that have adopted slayer statutes, twenty-seven have included language to the effect that the property that would otherwise go to the slayer passes as if the killer predeceased the decedent. *See* sources cited *supra* note 3 (listing the states that have slayer's statutes and the treatment of what would have been the slayer's share of the estate). The remaining statutes provide for alternative distribution as if the slayer disclaimed his or her share or simply provide that the other heirs of the decedent should split the slayer's share. *Id.* These statutes express the legislatures' considered opinions regarding the treatment to be given the slayer and the decedent's other heirs. In Maryland, we do not have the benefit of a similar statute or expression of legislative intent.

At oral argument, the Court was referred to a Kentucky case, *Bates v. Wilson*, 313 Ky. 572, 232 S.W.2d 837 (1950). The Kentucky court, relying on the Ohio slayer's statute, which stated that the slayer "shall be considered as though he preceded in death the person killed," read into their own statute a legislative intent to allow the child of the slayer to inherit from the slayer's victim. *Id.* at 838. The Kentucky slayer's statute provides:

> "That if the husband, wife, heir-at-law, beneficiary under any insurance policy shall have taken the life of the decedent and be convicted therefor of a crime which is a felony, the person so convicted forfeits all interest in and to the property of the decedent, including any interest he would receive as surviving joint tenant, and the property interest so forfeited descends to the decedent's other heir-at-law, unless otherwise disposed of by the decedent."

*Wilson v. Bates*, 313 Ky. 333, 231 S.W.2d 39, 40–41 (1950) (quoting from Chapter 97, Acts of 1940, now Ky.Rev.Stat. Ann. § 381.280 (Banks Baldwin 1940, 2003)). (*Wilson* is the companion case to *Bates v. Wilson, supra.*)

Notwithstanding the analysis of the Kentucky Court of Appeals, we find the logic and reasoning of the Tennessee Court of Appeals in *Carter v. Hutchison,* 707 S.W.2d 533 (Tenn.Ct.App.1985) *cert. denied* 8 April 1986, more persuasive. *Carter* involved the efforts of a great-grandchild to inherit from his great-grandfather who was slain by the child's father.

Tennessee's slayer statute provides:

Any person who shall kill, or conspire to kill, or procure to be killed, any other person from which the first named person would inherit the property, either real or personal, or any part thereof, belonging to such deceased person at the time of deceased person's death, or who would take the property, or any part thereof, by will, deed, or otherwise, at the death of the deceased, shall forfeit all right therein, and the same shall go as it would have gone under the provisions of § 31–2–104, or by will, deed or other conveyance, as the case may be, provided, that this section shall not apply to any such killing as may be done by accident or in self-defense.

Tenn.Code Ann. § 31–1–106 (1984). Looking to the statute for guidance, the court noted that the slayer's statute accomplished two things: first, it provided that the slayer forfeited all rights he might have had in the estate of the deceased, and second, it provided that the property should be distributed according to the Tennessee intestate statute. *Carter,* 707 S.W.2d at 538. It further recognized that the interest of the great-grandchild "must be governed by [the Tennessee intestate statute] because it is the exclusive prerogative of the General Assembly to prescribe by statute the manner in which intestate estates within its boundaries will be distributed." *Id.*

The Tennessee intestate statute provided that "the estate of a decedent leaving no surviving spouse should pass to the 'issue of the decedent.'" *Id.* (quoting Tenn.Code Ann. § 31–2–104). Unlike our statute which excludes descendants of living lineal descendants, the Tennessee statute defines issue as including "all the direct, lineal descendants of the de-

ceased." *Id.* (Internal citations omitted.) Consequently, the slayer's child qualified as issue of the decedent within the meaning of the statute and presented "a claim against his great-grandfather's estate independent of his father." *Id.* The court concluded by noting:

> Thus, in accordance with our construction of Tenn.Code Ann § 31–1–106, we need not, by judicial fiat, engraft a presumption that a slayer predeceases his victim onto our descent and distribution statutes. While our decision may have the same effect, it is not for the Courts but the Legislature to articulate the State's policy with regard to the distribution of descendants' estates.

*Carter,* 707 S.W.2d at 539.

In Maryland, it is well settled that the Legislature has the authority to regulate the distribution of property through statutes of decent. *See State v. Dalrymple,* 70 Md. 294, 298, 17 A. 82, 82 (1889)(stating that it was an "indisputable proposition" that "[e]very state in the Union ... has the authority to regulate by law the devolution and the distribution of an intestate's property situated within the jurisdiction of the state ... and to prescribe who shall and who shall not be capable of taking it"). *See also Washington County Hospital Ass'n v. Mealey's Estate,* 121 Md. 274, 280, 88 A. 136, 138–39 (1913) (quoting with approval *Dalrymple* ). The General Assembly exercised its authority and defined the term issue so as to exclude the lineal descendants of living lineal descendants.

Based on the plain meaning of the statute, the grandchildren are not issue of their grandfather within the meaning of the statute because their father did not predecease them. Consequently, they may not maintain their claim to share in the estate based on the intestate statute. Furthermore, they have presented no alternative basis, for example, a bequest in a will or a promise in an insurance document, to support a claim independent of their father. Thus the apparent underlying basis of their claim to share in their grandfather's intestate estate is through their father, an action prohibited by the Slayer's Rule.

Lastly, it has been argued to the Court that to prohibit the children from inheriting from their grandfather is somehow punishing them for the acts of their father. We disagree. Assuming, *arguendo*, that Charles had not killed his father and instead Frederick died of natural causes, the estate would be divided between Deborah Grierson as the surviving spouse and Charles as the only issue pursuant to the intestate statute. *See* Md.Code (1972, 2001 Repl.Vol.), §§ 3–101–103 of the Estates and Trust Article. Under that scenario the grandchildren would not inherit anything from their grandfather. They had no interest in the intestate's estate prior to their father's act of patricide, and they have no interest afterward because of the law of intestate succession. Indeed, if we were to adopt the legal fiction that Charles predeceased his father, the children would be placed in a better position than if their grandfather had died of natural causes. We agree with the Tennessee court. If statutes of descent and distribution need to be changed to allow the children of a slayer to inherit from the slayer's victim, the change should come from the legislature and not the judiciary.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**