**CHEROKEE INSURANCE COMPANY et al., Plaintiffs,**

**v.**

**L. A. KOENENN, Jr., and Holton D. Turnbough, et al., Defendants-Appellants,**

**v.**

**William E. SEATON and Gladys M. Seaton, Defendants-Appellees.**

No. 75–1038.

United States Court of Appeals, Fifth Circuit.

Aug. 4, 1976.

Larry L. Lenoir, Gulfport, Miss., for L. A. Koenenn, H. Turnbough & Captain's Table.

Fred A. Ross, James A. Phyfer, Jackson, Miss., for Wm. E. &· Gladys M. Seaton.

Eldon L. Bolton, Jr., Gulfport, Miss., for Hemenway Contract Furnisher, etc.

Before GEWIN, COLEMAN and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge.

On October 6, 1973, fire completely destroyed the Captain's Table restaurant of Gulfport, Mississippi. Three insurance companies—Cherokee Insurance Company, Federal Insurance Company, and Fidelity & Casualty Insurance Company—had issued a total of $30,000 in policies covering potential fire losses at Captain's Table. Asserting that L. A. Koenenn, Jr., Holton D. Turnbough, William E. Seaton, Gladys M. Seaton, Captain's Table, Inc., and Hemenway Contract Furnishers had all made claims against the insurance proceeds, the three companies filed an interpleader action naming these claimants as defendants, and deposited the $30,000 into the registry of the district court. The defendants filed answers and other pleadings, and the case was tried to the court. The judge ordered (1) the payment of $19,025.67 to Hemenway Contract Furnishers, (2) an equal division of the remaining proceeds[1] between L. A. Koenenn, Jr. and Holton Turnbough on the

---

1. All references to the proceeds to be distributed by the trial court refer to the proceeds left in the registry after the payment to Hemenway. Also included in that remaining sum is the $3,683.85 which was paid into the court and which represents the salvage value of the insured property after the fire.

one hand and Gladys M. Seaton on the other hand, and (3) the cancellation of a promissory note issued by Gladys and William Seaton and made payable to Koenenn and Turnbough. No one has appealed the disposition of the trial court's order with respect to Hemenway, and Hemenway is not a party to this appeal. Koenenn and Turnbough, however, contest the division of the proceeds and the cancellation of the note. After carefully reviewing the record and the law, we have decided that the trial court lacked jurisdiction to cancel the note. With regard to the division of the remaining insurance funds, we find that the district court's conclusion is based at least in part on an erroneous factual determination and, in addition, that the legal analysis supporting the court's conclusion requires further clarification. Therefore we vacate the district court's order extinguishing liability on the note and remand the remaining issues for consideration in the light of this opinion.

## I. Background

Until November 17, 1972, L. A. Koenenn and Holton Turnbough owned 100% of the stock of Captain's Table, Inc. On that date, they entered into a contract with Gladys M. Seaton and William E. Seaton in which Koenenn and Turnbough agreed to sell their stock to the Seatons for $27,000—$12,000.00 to be paid to the sellers upon execution of the agreement, with the balance of the purchase price to be evidenced by a promissory note for $15,000 due November 17, 1975. The agreement provided that the sellers would retain the actual stock certificates until they had received the full purchase price. According to the seller's brief on appeal, "[o]n November 17, 1972, the Seatons took possession of the business of Captain's Table, Inc. and the management thereof."

Six months after the consummation of the purchase and sale agreement discussed above, Koenenn and Turnbough had the local insurance agent issue in their names a standard form loss payable clause on the Captain's Table's insurance policies. The clause simply provided that "any loss ascertained and proven to be due to the insured [Captain's Table, Inc.] under this policy shall be held payable to L. A. Koenenn and Holton B. Turnbough . . . as interest may appear." Koenenn and Turnbough obtained this clause without first informing the Seatons. On October 6, 1973, the building rented by Captain's Table burned, destroying the restaurant's furniture and equipment. The insurance companies, admitting liability but not certain of the proper beneficiary under the policies, brought this interpleader action.

After ordering the $19,025.67 payment to Hemenway not objected to here, the trial judge issued two opinions. The first opinion, finding that Turnbough and Koenenn "simply acted personally and individually and exclusively for their own interest and protection in securing these three loss payable clauses. . . . " and that they "accomplished nothing thereby" ordered the remaining registry funds paid pro rata to the creditors of Captain's Table, Inc. In a supplemental opinion issued two weeks later, the trial court noted that because "the parties are in irreconcilable conflict as to a proper disbursement of the proceeds . . . it now becomes the unpleasant duty of the Court to divide this insurance money equitably and fairly . . . ." The judge then ordered the payment of one-half the funds to Mrs. Seaton and the other half to Koenenn and Turnbough. In addition, stating that the stock of the corporation had become worthless, the trial court cancelled the not yet matured $15,000 note from the Seatons to Koenenn and Turnbough. From these orders, Koenenn and Turnbough have appealed.

## II. The Note

The trial court erred in relieving the Captain's Table purchasers of their $15,000 obli-

gation because that court lacked jurisdiction over the issue of whether or not the note was still binding. The question of the Seatons' promissory duties initially arose from their somewhat jumbled answer to the interpleader complaint. In their response, the Seatons seemingly asserted that the corporate sellers' failure to fulfill a purported contractual obligation to transfer to the Seatons certain alcoholic permits required cancellation of the note.

We observe preliminarily that the buyers introduced no evidence to support their claim.[2] Moreover, the district court's decision to abrogate the buyers' remaining liability was not premised on the Seatons' claim that the sellers did not fulfill their obligation to transfer liquor licenses but rather on the court's own determination that "the stock of this corporation is now worthless." The basis of this finding of worthlessness is not clear from the trial court's opinion, and even if the stock of Captain's Table, Inc. was "worthless" at the time of trial we are skeptical of the conclusion that the buyers would, for that reason alone, be relieved of their prior duties to the sellers. We need not decide these issues, however, since we conclude that jurisdiction to consider the issues relating to the promissory note did not exist.

■ Viewing the buyers' theory most favorably, we treat their contentions as stating a cross-claim against their fellow interpleader defendants, Koenenn and Turnbough. There is, however, no jurisdictional basis for the trial court's consideration of such a cross-claim. First, no Federal question or diversity[3] jurisdiction appears with respect to the cross-claim.

■ Second, the absence of a "common nucleus of operative fact," *United Mineworkers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218, 228 (1966), defeats any argument that pendent jurisdiction exists over the cross-claim. *See*

*generally,* 13 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 3567 (1975). The facts which might support the assertion that Koenenn and Turnbough failed to transfer a liquor license at best would relate only tangentially to the facts underlying the interpleader question of the validity of the loss payable clause and consequently the proper distribution of the insurance funds.

■ Third, the differences in the properties and transactional occurrences which are the subject matter of the cross-claim on the one hand and the interpleader action on the other hand preclude any resort to ancillary jurisdiction. A number of courts have held that ancillary jurisdiction will sustain jurisdiction over a cross-claim pled as part of an interpleader suit *if* the requirements of Federal Rule of Civil Procedure 13(g) are met. *See, e. g., Jefferson Standard Insurance Co. v. Craven,* 365 F.Supp. 861 (M.D. Pa.1973); *Beaufort Transfer Co. v. Fischer Trucking Co.,* 357 F.Supp. 662 (E.D.Mo. 1973); *Degree of Honor Protective Ass'n v. Charles T. Bisch & Son, Inc.,* 194 F.Supp. 614 (D.Mass.1961); *Great Lakes Auto Ins. Group of Chicago v. Shepherd,* 95 F.Supp. 1 (W.D.Ark.1951); *Hallin v. Pearson,* 34 F.R.D. 499 (N.D.Cal.1963); *Bank of Neosho v. Concord,* 8 F.R.D. 621 (W.D.Mo.1949); *Cf. Coastal Air Lines v. Dockery,* 8 Cir. 1950, 180 F.2d 874. Federal Rule of Civil Procedure 13(g) states in pertinent part:

A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.

Concerning the relationship between Rule 13(g) and an interpleader suit, Wright and Miller have written:

When interpleader is brought under Rule 22 . . . there is no difficulty in

---

2. The Seatons did attach to their complaint the order revoking the Captain's Table's liquor license. However, standing alone, that order suggests only that the state revoked the

license—not that the sellers breached any contractual duty.

3. The buyers and sellers are all Mississippi citizens.

allowing the claimants to assert cross-claims against each other . . . assuming, of course, the requirements of Rule 13(g) are met. Normally, the addition of a cross-claim will not pose any difficulties or unduly complicate the action because Rule 13(g) requires the claim to arise out of the transaction or occurrence or relate to the property that is the subject matter of the original interpleader action. The cross-claim will be considered ancillary for subject matter jurisdiction purposes.

7 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1715 at 449–50.

*See also* 3A J. Moore, *Federal Practice* § 22.15. Here, the cross-claim and interpleader claim lack sufficient congruency with respect to both the property involved and the transactions from which they arose to come within rule 13(g). We conclude, therefore, that in cancelling the unmatured promissory note, the district court exceeded its jurisdiction. The trial court's order extinguishing the $15,000 obligation is vacated.[4]

### III. The Insurance Proceeds

■ The question of the proper distribution of the insurance proceeds remains. In the absence of a valid loss payable clause,[5] the entire insurance fund belongs to the named insured—Captain's Table, Inc. *See generally* 5Aa J. Appleman & J. Appleman, *Insurance Law & Practice* § 3331 (1970). Koenenn and Turnbough do not dispute this conclusion but argue instead that since the loss payable clause is controlling, they are entitled to payment according to the terms of that clause, that is as their interest may appear. They claim an interest of

$4,176.45, the amount they had to pay to a creditor of Captain's Table in their capacity of guarantors on Captain's Table's obligation to that creditor. The remainder of the funds should, according to the two sellers, go to the Captain's Table, Inc.[6]

We agree with the main thrust of Koenenn and Turnbough's analysis but, at this point, are unable to determine whether or not the loss payable clause was properly authorized by the insured, Captain's Table, Inc., and therefore effective. *See generally* Appleman & Appleman, *supra* §§ 3335, 3341.

> The trial court recited that Mrs. Seaton had the policies of insurance, or copies thereof in her possession and said that she knew nothing of this change of beneficiaries in these three policies to these common creditors, but a representative of the insurance company testified that he was at the Captain's Table shortly after May 23, 1973, and that he either showed these loss payable clauses to William E. Seaton, or then told him of their existence. Mr. Seaton was present in court and did not testify and did not deny that positive statement.

The judge also said:

> The question here is as to the right and power of these stockholders [Koenenn & Turnbough] in this corporation to have unilaterally changed the beneficiaries in these policies from the name of the company to their personal names and for their personal benefit and exclusive advantage under the circumstances. . . These two individuals were not even directors of the corporation at the time and did not even bother to take such matter

4. We reiterate that we do not reach the merits of the Seatons' claim. In a later proceeding where proper jurisdiction over the issue of the note exists, the Seatons might offer evidence not presented to the court below.

5. A loss payable clause names the payee of the insurance proceeds. The clause, however, must be validly issued, and the payee is entitled to recover only the amount of his actual interest in the insured's property. Of course, the outside limit of the potential payment is

defined by the amount of the insurance policy. *See generally* Appleman & Appleman, *supra* §§ 3335 *et seq.*; C.J.S. Insurance §§ 919, 1147.

6. Appellees do not argue that Koenenn and Turnbough's interest was not sufficient to cover their claim of $4,176.45. Instead they contend that Koenenn and Turnbough obtained the loss payable clause without the consent of the named insured and that, therefore, the clause cannot avail the two sellers.

up at a director's meeting if called for such purpose.

The court concluded that Koenenn and Turnbough "accomplished nothing thereby."[7]

We do not think these findings or the accompanying legal analysis are sufficient to support the judge's conclusion that the loss payable clause was not validly obtained. Not only does one of the court's main factual determinations appear to be clearly wrong, but, also, different parts of the opinion seem to point to different legal theories suggesting opposite results with respect to the question of the effectiveness of the loss payable clause. We are not saying that the district court's conclusion about the loss payable clause is necessarily wrong. We conclude only that further clarification is needed to explicate the confusion which currently inheres in its opinion.

■ The trial court, without legal analysis or references to the evidence, states that Koenenn and Turnbough were not directors. In reviewing this case, we find that all of the proffered evidence indicates that Koenenn and Turnbough were directors of Captain's Table, Inc., at the time of the issuance of the loss payable clause.[8] If the sellers were directors, then as members of the corporate organ charged by Mississippi law with managing the corporation, Mississippi Code Ann. § 79–3–67 (1972), they may indeed have had the power to obtain the loss payable clause. Also, insofar as retention of the stock certificate secured their right to vote the stock, *see generally* W. Fletcher, *Cyclopedia of Private Corporations* §§ 2033–34 (Wolf Rev.

1967), then it might be said that the sellers, with 100% voting power, acquiesced in or ratified their own actions in obtaining the insurance clause. *See generally id.* §§ 979–985.

Another theory which might result in a conclusion contrary to the district court's is hinted at by the opinion's recitation of the testimony about delivery of the insurance policies to the Seatons. Unfortunately, we are not told whether or not the trial judge accepts as fact this testimony or places any significance on Mr. Seaton's failure to testify. If Mrs. Seaton had possession of the altered policies and if Mr. Seaton knew of the existence of the loss payable clauses, then the Seatons might be said to have legally acquiesced in the issuance of the clause or alternatively to have waived any rights to object.

We observe also that a number of theories could support the court's conclusion of the invalidity of the loss payable clause. For instance, as the buyers seem to suggest in their brief, the sellers may have failed to comply with Mississippi corporate procedure in electing directors and taking corporate action—thus tainting their actions in obtaining the loss payable clause. The district court, however, did not address itself either to the underlying facts here or to possible legal theories—perhaps because the court, having found that the two sellers were not directors, felt no need to proceed further in its analysis.

■ Another theory suggested by the court's language but not fully developed or explicitly relied on by the trial judge involves the parties' contractual intent at the

7. The court also said: "That action [obtaining the loss payable clause] was taken without any consent or approval of the directors of the corporation and without the knowledge and consent of William E. Seaton and Gladys M. Seaton."

8. Koenenn testified that he and Turnbough were the only directors of the corporation. Minutes of the November 17, 1972, March 5, 1973, and March 4, 1974, board meetings and of the March 5, 1973, and March 4, 1974, shareholders meeting were introduced into evidence. The minutes of the shareholders' meeting reflect the annual election of Koenenn and Turn-

bough as directors. The directors' meetings' minutes show Koenenn and Turnbough attending as directors. If the district court did not accept this evidence as proof of the sellers' status as directors or if for any reason their elections were tainted or invalid, *see infra,* we are not so informed by the court's written opinions. Moreover, the court found in its first opinion that "neither [Gladys nor William Seaton] was elected as a director." If neither the Seatons nor Koenenn and Turnbough were directors, then we are at a loss to know who were the directors.

time of the signing of the purchase and sale agreement. By allowing the sellers continued possession of the corporate stock pending the buyers' payment of the balance of the purchase price, the parties may have intended (or at least the Seatons may have intended and the sellers knew of their intention) only to confer on the sellers a security interest in the stock—the purpose of which security interest was to protect the sellers against the buyers' default. Under this interpretation of the purchase and sale agreement, all power to manage and control the corporation, including control over the corporation's insurance policies and the right to vote the stock shifted to the buyers. *See generally* Fletcher, *supra* § 2034 at 178. If this were true, then the sellers may have been acting beyond their authority in procuring the loss payable clause. Of course, for the reasons discussed earlier, the Seatons still may have acquiesced in the action of Koenenn and Turnbough, even if the latter two initially exceeded their authority.

After reviewing the lower court's opinion, we remain unsure which, if any, of these theories is applicable to the present controversy. The proper resolution of the loss payable controversy may necessitate additional factual findings and certainly requires further legal analysis or at least clarification by the trial judge of his earlier reasoning. Therefore, we remand this case to the lower court for the determination of such additional facts as may be needed and for its consideration of the issues raised above.

If on remand the district court concludes that the loss payable clause is effective in the sellers' favor, then the court will 1) pay to Koenenn and Turnbough the amount determined by the court to represent their interest under the loss payable clause and 2) transfer the remaining proceeds to Captain's Table, Inc. If the court reaffirms its conclusion that the loss payable clause was ineffective, then the insurance money will be paid to Captain's Table, Inc.—the named insured.

■ We observe that in its original opinion, the district court, having found the loss payable clause invalidly obtained, directed that the insurance proceeds should be paid directly to the corporation's creditors. The court did not determine the amount of debt held by each creditor nor did it make any provision for payment to the corporation of any monies which might have remained after distribution to the creditors. When the parties could not agree on the amounts owed Captain's Table's creditors, the district court issued its supplemental opinion dividing the registry funds with half going to Turnbough and Koenenn and the other half going to Mrs. Seaton. Despite the Solomonic appearance of this result, we think that given the special facts of the case and the confusion below, the creditors claims should not have been adjudicated. Instead, the monies should have been paid as indicated in the preceding paragraph. If the corporation had been dissolved at the time of the lawsuit, then a direct payment to the creditors might, upon proper proof, have been an appropriate exercise of the district court's powers in this interpleader action.[9] Yet we have uncovered no evidence of dissolution, and counsel for Turnbough and Koenenn have informed this Court that Captain's Table, Inc., remains an

---

**9.** A distribution directly to the corporation's creditors would have required a determination by the district court of the extent to which the various parties were bona fide creditors of the corporation. If the loss payable clause was not validly obtained, Koenenn and Turnbough may have a claim as subrogees for the amount they paid as guarantors of one of Captain's Table's notes. Mrs. Seaton claims that she put over $24,000 into Captain's Table, but there is some uncertainty as to whether or not this money was given as debt and as to the repayment terms if it was debt. The district court did not discuss these questions and thus could not have known how much money to distribute to each creditor. Without intimating any views as to the validity of the alleged creditors' claims, we note that in no event was the district court justified in splitting the proceeds 50–50 among the existing creditors without first having determined that each of the two groups of creditors held 50% of the Captain's Table debt and also that the corporation's total debt to these creditors equaled or exceeded the amount of the insurance proceeds payable to the corporation.

existing corporate entity. As such, and in the particular circumstances of this case, the district court should have paid the portion of the insurance money belonging to the corporation directly to Captain's Table which then could have paid its creditors.[10] Any claims against the corporation for unpaid debts could have been brought and adjudicated in later judicial proceedings—probably in state court due to the nature of the claims. For the foregoing reasons, the judgment below is vacated and this cause is remanded for further proceedings consistent with this opinion.

VACATED and REMANDED.

---

10. We observe also that neither Koenenn and Turnbough nor the Seatons pled a cross-claim against Captain's Table alleging a debt due from the corporation.