Kimberly **CARLTON**, Plaintiff,

v.

**WAL–MART STORES, INC., et al.,** Defendants.

No. 401 CV 266.

United States District Court, S.D. Georgia, Savannah Division.

Nov. 12, 2002.

Richard H. Middleton, Jr., Suggs, Kelly & Middleton, Derek J. White, Derek White Law Firm, Savannah, GA, for plaintiff.

Albert J. DeCusati, W. Anthony Moss, McLain & Merritt, PC, Atlanta, GA, for defendants.

### ORDER

EDENFIELD, District Judge.

### I. BACKGROUND

In this slip and fall case, defendant Wal–Mart Stores, Inc., moves for summary judgment against plaintiff Kimberly Carlton. Doc. # 21. While shopping in a Savannah, Georgia Wal–Mart store, Carlton slipped and fell on some spilt shampoo. Doc. # 35 at 13–16, 19. She brought this negligence action to recover for her injuries.

## II. ANALYSIS

### A. Summary Judgment Standards

This Court applies the summary judgment principles explained in *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir.1996); *Cohen v. United American Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir.1996) and *Nizami v. Pfizer, Inc.*, 107 F.Supp.2d 791, 799 (E.D.Mich.2000). Unrebutted, evidentially supported Fact Statements are deemed admitted under S.D.Ga.Loc. R. 56.1 and *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir.1988).

### B. "Slip and Fall" Standards

■ Store owners must exercise reasonable care to maintain safe areas (hence, floor surfaces) where patrons shop:

> An owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe. This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge.

*Mayhue v. Middle Georgia Coliseum Authority*, 253 Ga.App. 471, 472–73, 559 S.E.2d 488 (2002), cited in Ann., *Store or business premises slip-and-fall: Modern status of rules requiring showing of notice of proprietor of transitory interior condition allegedly causing plaintiff's fall*, 1978 WL 43033, 85 A.L.R.3d 1000 § 3 (1978); *Gilbert v. Automotive Purchasing Serv.*, 254 Ga.App. 770, 771, 563 S.E.2d 906 (2002).

■ While there is no strict liability, the law charges store owners with (1) knowledge that products can fall and create hazards; and (2) the duty to take reasonable steps to protect customer-invitees against same. *Gilbert*, 254 Ga.App. at 771, 563 S.E.2d 906 ("[U]nder Georgia law, one who creates a dangerous condition on his property has constructive knowledge of the danger").

■ Georgia courts limit that liability, however, by applying a two-part test

> for determining whether an invitee can recover damages in a slip and fall action. First, the plaintiff must prove that the defendant had actual or constructive knowledge of the hazard. Next, the plaintiff must demonstrate that he or she lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier. If a plaintiff is unable to demonstrate that she lacked knowledge of the alleged hazard ... summary judgment in favor of the defendant is warranted.

*Yon v. Shimeall*, 572 S.E.2d 694, 695 (2002) (quotes and cites omitted) (citing *Robinson v. Kroger Co.*, 268 Ga. 735, 748–49, 493 S.E.2d 403 (1997)).

■ Slip and fall defendants, then, attempt to show that the plaintiff knew or should reasonably have known of the hazard, yet failed to exercise sufficient care to avoid it. *See, e.g., id.* at 695 (Guest's equal knowledge of hazard precluded recovery against landlord in premises liability action for injuries guest suffered when she fell down stairs to basement apartment; guest had safely negotiated stairs at least 8 times over course of weekend, making two trips at night, and had safely walked down stairs while they were wet after rain storm).

This defense attempts to negate the basis of an owner's liability to an injured invitee—superior knowledge of the danger—for "[i]t is when the perilous instrumentality is known to the owner or occu-

pant and not known to the person injured that a recovery is permitted." *Delk v. Quiktrip Corp.*, 572 S.E.2d 676, 677–78 (2002) (quotes and cite omitted); *Lake v. Atlanta Landmarks, Inc.*, 570 S.E.2d 638, 639–40 (2002).

This defense was successful in *Lake*, as well as in *Delk*, at 677–78 (Customer who twisted her foot on raised gasoline storage tank cover while walking across gasoline station parking lot had actual knowledge of the static defect which was equal to station's knowledge, and thus customer was not entitled to recover for her injuries, even though rain and vehicular traffic were alleged distractions; customer testified that she knew of tank covers prior to the purported distractions, that she had previously visited the station frequently during both daylight and nighttime hours and during all types of weather, and customer had safely traversed a similar path through the traffic and across the alleged hazard under the same conditions of rain and traffic immediately prior to her injury).

But those cases involve a static, not a transient hazard, plus evidence that the plaintiff had prior knowledge of the hazard yet failed to avoid it. In transient-hazard cases (*e.g.*, just-fallen grapes, spilt liquids, etc.), the focus shifts to what the store owner did to reasonably detect and protect against same, versus what can be reasonably expected, self-protection-wise, of a patron.

■ Courts in the latter category have created this baseline: where a substance falls just before a customer slips on it, as a matter of law no duty was violated because it would be silly to expect store personnel to follow each customer around and leap in front of each fallen grape.

Surrounding context is critical here. Thus, coliseums, where many a fan and floor vendor can drop food and spill drink, have next to no duty to protect because patrons should expect "sloppier" floor conditions, and the cost of preventing same obviously would render ticket prices unacceptable.[1] But what about lower floor-traffic volume venues like grocery or discount stores?

■ The case law is constantly evolving here, but this much seems clear: those store owners must employ a reasonable inspection and clean-up regime. Thus, plaintiffs who can show that they were looking out for themselves but nevertheless slipped and fell on something can recover if the owner's inspection regime negligently failed. *See, e.g., Medders v. Kroger Co.*, 572 S.E.2d 386, 388 (2002).

Such plaintiffs therefore can negate the owner's claim that he exercised reasonable care by showing that a substance was on the floor for a long time. Yet, "regardless of any inspection program, when a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, [Georgia courts] have held that the inspection procedure was adequate as a

---

1. Hence, the *Mayhue* court concluded:

    It is reasonable for a patron of the Macon Coliseum to encounter food on the ground near the concession stand at the end of a circus performance. In fact, Mayhue deposed that it is not uncommon to see debris on the ground at the facility and that he had left trash on the ground himself. Accordingly, we agree with the trial court that a container of nacho cheese on the floor of the Macon Coliseum does not pose an "unreasonable risk of harm" to a patron leaving the circus. Under the facts of this case, we hold that it would be *unduly burdensome* to require the Authority [that ran the Coliseum] to prove that reasonable inspection procedures were in place and followed at the time of the incident.

    *Id.* at 474, 559 S.E.2d 488 (emphasis added).

matter of law." *Id.* (quotes and cite omitted).[2]

■ Plaintiffs alternatively can show that, even if the substance was on the floor for a short amount of time, nevertheless an employee was nearby and should have detected/cleaned it up. *Bolton,* 257 Ga.App. 198, 199, 570 S.E.2d 643, 644 (2002). But merely "[s]howing that an employee was in the vicinity of a foreign substance is not sufficient to preclude summary judgment [for the store owner]. It must [also] be shown that the employee was in a position to have easily seen the substance and removed it." *Id.*

The *Bolton* plaintiff failed to show that. *Id.* (slip and fall plaintiff failed to establish store's constructive knowledge of hazardous clear liquid substance on the floor, even though there were employees in customer's immediate vicinity at the time of the fall; customer testified that the color of the floor and lighting conditions made substance undetectable, and store employee had been in the exact area ten to fifteen minutes earlier, at which time the floor was clear of any foreign substance); *see also Medders,* 572 S.E.2d at 386; *Dix,* 570 S.E.2d at 90.

*Bolton* may be profitably contrasted with the result and supporting reasoning found in *Dix.* The *Dix* court held that a fact issue existed because, while shopping in a supermarket's produce section, plaintiff Dix slipped on a muscadine that had fallen to the floor. She said she had no idea how long it had been there, and was accustomed to seeing employees cleaning the area on other occasions. But a store manager

testified that she had an unobstructed view of the spot where Dix fell 20–25 feet away, and that two other employees had the same viewpoints. She testified that in the five-minute interval between the time of a store inspection and the incident, she noticed customers eating fruit near the front of the store. In view of her testimony of her observation of some customers eating fruit, her admission that she could have seen the muscadine, and her vantage point and proximity along with two other employees, a jury could conclude that Kroger had constructive knowledge of a dangerous condition. This is especially true given the fact that this incident occurred in the produce department where the majority of such incidents occur. The jury would also be free to consider whether or not Kroger was negligent in conducting its inspection and to determine the credibility of the witnesses. 570 S.E.2d at 91.

*Dix* thus illustrates the constructive-knowledge principle: an employee was in the vicinity and *reasonably* could have detected and corrected the hazardous condition. And, even if the muscadine had fallen shortly before Dix slipped on it, the employee's admission that she could have seen it precluded summary judgment for the store owner.

Contrast *Bolton,* where the plaintiff conceded that she "would never have seen [the clear liquid on which she slipped] in a million years," *Bolton,* 257 Ga.App. 198,

---

**2.** "Brief amount of time" means upwards of 15 minutes. *See Roberson v. Winn–Dixie Atlanta,* 247 Ga.App. 825, 825–26, 544 S.E.2d 494 (2001) (Store employee, who was not in immediate area when customer fell, but testified that he had inspected floor 15 minutes before customer fell, could not have seen and removed any foreign substance on floor before fall, and thus, store was not liable in negligence for customer's slip and fall accident in produce department), cited in *Dix v. Kroger Co.,* 257 Ga.App. 19, 570 S.E.2d 89, 90 (2002); *see also Bolton v. Wal–Mart Stores, Inc.,* 257 Ga.App. 198, 570 S.E.2d 644 (2002) (10 minutes); cases collected in defendant's brief, doc. # 22 at 10–16.

570 S.E.2d at 644, and where Wal–Mart's employee had been in the area some ten minutes beforehand yet detected no such substance. *Id.* So, with no evidence that the liquid had been on the floor for an excessive amount of time, much less that it was noticeable or that a nearby employee reasonably could have seen it, the court concluded that Wal–Mart was entitled to summary judgment.

The same result is found in *Medders*, 572 S.E.2d at 388 (shopper's slip and fall case against grocery store failed, where it was undisputed that no store employees were in the immediate area when the shopper slipped, and the shopper could not show that the spill had been on the floor for a sufficient length of time for a store employee to have seen and removed it).

## C. Carlton's Evidence

Carlton argues that Wal–Mart is not entitled to summary judgment because:

(1) she had no prior knowledge of the spilt shampoo, and did not see it before she slipped on it, doc. # 26 at 13–14

3. The store manager for that day, doc. # 32 at 13, testified that, depending upon the customer volume and "customer shopping habits" ("[s]ome ... just shop a little rougher"), the store conducted a minimum of four daily store "safety sweeps" ("the actual pushing of dust mops through the store," and clean-up of any spills), but more, if warranted, and "it was probably closer to every hour" or "every hour and-a-half." Doc. # 32 at 23, 24, 41. Staff were not to leave a detected spill until it was cleaned up. *Id.* at 42.

4. After the incident but before this lawsuit Wal–Mart terminated Ward for stealing from it. Doc. # 32 at 40; *see also* doc. # 33 (attached record of Ward's felony theft conviction).

5. Plaintiff's summary-judgment response brief insists that "[o]n the day and time in question, the other associate employee [placed HBA items in the return cart] and one such item was *the exact blue shampoo* in which Ms. Carlton slipped and fell." Doc. # 30 at 5

("And I was walking [down the Health and Beauty Aid (HBA) aisle] looking at the [hair] barrettes, took a step and fell—slid and fell");

(2) while "zoning" the HBA department (*i.e.* "making sure everything is stocked and the aisles are in order"), *id.* ¶ 4,[3] then Wal–Mart employee Lois Ward[4] saw a fellow-employee dump HBA materials, including shampoo, into a shopping cart; at least 15 minutes later, plaintiff slipped and fell on shampoo in that area, doc. # 30 exh. 1 ¶ 4–6;

(3) Ward "was right around the corner on a different aisle performing [her] duties when this occurred," *id.* ¶ 6; and

(4) after plaintiff fell, Ward summoned her manager and immediately "thought of the shampoo that was a part of the zoning. In order to make sure of the source of the shampoo, [she] went to look at the basket that contained the items from the HBA return cart. It had the exact *type* of shampoo spilled on it as well." *Id.* ¶ 6 (emphasis added).[5]

(emphasis added). She cited Ward's affidavit to support that assertion. But Ward attested that the spilt bottle was the exact *type* of shampoo, not *the* exact shampoo on which plaintiff slipped.

This distortion is no accident. Plaintiff's brief continues: "As a result of negligently performing this duty, shampoo leaked onto the floor. Defendant's associate allowed the shampoo to leak on the floor, failed to remove it, and allowed it to remain on the floor until Ms. Carlton slipped and fell in it some fifteen minutes later, if not more." *Id.* (emphasis added; cite omitted). Again, Ward did not (nor could she) state that the very shampoo the associate handled was *the* exact shampoo on which plaintiff slipped. Worse, plaintiff asserted this in the parties' Consolidated Pretrial Order:

The blue substance came to be on the floor as a result of defendant's employee shelving and unshelving shampoo. As the employees were performing this task, some of the shampoo spewed onto the cart being used

Wal–Mart, plaintiff emphasizes, had 50–60 employees on the floor at the time of the incident, doc. # 32 at 18, 43, but Jacobia Robinson, assigned to the HBA department that day, was on break when plaintiff fell. Doc. # 37 at 14–15.[6]

This evidence tends to support Carlton. A Wal–Mart employee *perhaps* caused the shampoo to spill. *See supra* note 5. That's somewhat speculative, and speculation ordinarily does not prevent summary judgment, *see Medders*, at 388 ("This acknowledgment that something is 'possible' is mere speculation. For an inference to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility"), but Rule 56 entitles Carlton to all reasonable inferences in her favor, and it's arguably reasonable to infer that an employee caused the spill.

But Carlton has pointed to no Georgia case affixing liability based on who caused the spill. Patrons and employees alike unwittingly knock over things that cause a slippery result, and the focus is on the property owner's spillage detection/cleanup efforts, not the cause of the spill. In *Mayhue*, 253 Ga.App. 471, 559 S.E.2d 488, for example, the court made no such distinction (during coliseum events, floor walkers selling beer and cheese-dripping

natchos no doubt spill plenty from their front-mounted trays).

■ Yet, even if Georgia law sides with plaintiff on that point (*i.e.*, it counts for something that a store *employee*, rather than a patron, unwittingly caused the spill), Georgia courts nevertheless focus on the length of time that the hazard existed prior to the plaintiff's injury, and here the testimony is undisputed. Robinson testified that she had "zoned" the area just prior to Carlton's fall and thus detected no shampoo on the floor when she went on break. Doc. # 27 at 16; *see also id.* at 18. She was not gone but "about five to ten minutes" before the fall. *Id.* at 16. That falls within the "15 minute rule." *See supra* note 2. At most, then, Carlton can reasonably infer that an employee upturned a shampoo bottle in the "return" cart but the shampoo did not find its way to the floor beneath Carlton until within the 5–10 minute period that Robinson identified.

Put another way, Ward's "15–minute" testimony creates no issue of fact. Ward testified only that she saw another Wal–Mart employee dump items, including the same type of shampoo, into a return basket more than 15 minutes before plaintiff fell. She did *not* say that she saw the employee dump items *and spill the shampoo* more than 15 minutes before Carlton's

---

by the employee to place the unshelved shampoo or shampoo to be shelved. During this time, some of the shampoo spewed onto the floor and [was] subsequently encountered by plaintiff.

Doc. # 43 ¶ 9 (emphasis added).

There is no evidentiary basis for making these assertions. At most counsel reasonably can argue that a jury would be authorized to *infer* that the spilt shampoo was the shampoo just handled by the Wal–Mart associate prior to the incident. This Court's time and resources are wasted by attorneys who try to lead it astray, especially those who, without foundation, claim that opposing counsel has

advanced perjurious testimony before this Court. *See* doc. # 30 at 8 (seeking sanctions). An attorney's reputation is a currency that should never be lost when practicing before this Court. *See Ferron v. West*, 10 F.Supp.2d 1363, 1368, 1371 (S.D.Ga.1998) (reminding counsel that F.R.Civ.P. 11 sanctions await those who mischaracterize deposition testimony before this Court).

6. Robinson says she "probably was gone about, like I say, about five to ten minutes" and when she left the area she was aware of no shampoo spills on the floor. Doc. # 37 at 16.

fall. Nor does Ward negate, much less create a conflict with, Robinson's recollection that the floor was hazard-free "about five to ten minutes" before the fall. Doc. # 27 at 16.

That, in turn, renders debate about the efficacy of Wal–Mart's inspection program moot. *See Medders,* 572 S.E.2d at 388 ("regardless of any inspection program, when a proprietor has shown that an inspection occurred within a brief period prior to an invitee's fall, [Georgia courts] have held that the inspection procedure was adequate as a matter of law") (quotes and cite omitted).

### III. *CONCLUSION*

Accordingly, defendant Wal–Mart Stores, Inc.'s motion (doc. # 21) for summary judgment against plaintiff Kimberly Carlton is *GRANTED.* The Court *DISMISSES WITH PREJUDICE* plaintiff's Complaint.