The **PRUDENTIAL INSURANCE COMPANY OF AMERICA,**
Plaintiff,

v.

John C. **TOLBERT,** Wardell **Bell** and Patrice L. **Bell,** as guardians of the minors Sadie A. **Tolbert** and Saadio Nia S. **Tolbert,** Wardell **Bell,** as Executor of the Estate of Sauda **Tolbert,** Frances E. **Tolbert,** and Jason J. **Tolbert,** Defendants.

No. 403CV016.

United States District Court,
S.D. Georgia,
Savannah Division.

May 12, 2004.

G. Mason White, Elliot Blake Durham, Brennan, Harris & Rominger, Savannah, GA, Steven R. Sublett, Law Office of Steven R. Sublett, Wichita, KS, for Plaintiff.

Alex L. Zipperer, III, Zipperer, Lorberbaum & Beauvais, Savannah, GA, Jeffrey A. Cramer, The Cramer Law Firm, Jacksonville, FL, for Defendants.

## ORDER

EDENFIELD, District Judge.

### I. INTRODUCTION

Prudential Insurance Company of America (Prudential) brings this 28 U.S.C. § 1335 interpleader action to determine who should receive the proceeds of two military life insurance policies on Sauda Tolbert, who was allegedly murdered by her husband, John C. Tolbert. Defendants are the policies' named beneficiaries (John, their children Sadie and Nia, and John's mother and brother, Frances E. and Jason J. Tolbert). Doc. # 1 ¶¶ 15–16.

In response, defendant Wardell Bell (Sauda's father), on behalf of Sadie and Nia, demands the entire proceeds, thus counterclaiming against Prudential and cross-claiming against Frances and Jason. Doc. ## 15 & 27. Bell also asserts a wrongful death cross-claim against John. Doc. # 27 at 4. Frances and Jason move for summary judgment as to their claimed share of the proceeds. Doc. ## 19 & 21. They also move to dismiss Bell's cross-claims. Doc. # 29.

### II. BACKGROUND

At the time of her death, Sauda was a member of the U.S. Army stationed at Fort Stewart, Georgia. Prudential had issued her, under the Servicemen's Group Life Insurance Act (SGLI), 38 U.S.C. §§ 1965 *et seq.*,[1] two life insurance policies for $250,000 (Policy A) and $100,000 (Policy B), respectively. Doc. # 1 ¶¶ 15–16. Policy A named John 100% primary beneficiary, with their two daughters 50% (each) contingent beneficiaries. *Id.* ¶ 15. Policy B named Frances and Jason as 25% (each) beneficiaries and Sauda's estate as 50% beneficiary. *Id.* ¶ 16.

In early 4/02, Sauda died in an apparent homicide. *Id.* ¶ 14. The State of Georgia

1. SGLIs are life insurance policies on U.S. service men and women, issued by private insurance providers, but held by the federal government.

is now prosecuting John for murdering her. *Id.* Sadie and Nia now live in Kansas under the guardianship of their maternal grandparents, Wardell and Patrice Bell. Doc. # 27 exh. B.

But because public policy (the "slayer's rule") generally precludes killers, and sometimes their families, from benefitting from their victim's death, Prudential has not paid any proceeds from Sauda's SGLI policies to the named beneficiaries. *See Prudential Ins. Co. of Am. v. Athmer,* 178 F.3d 473, 475–76 (7th Cir.1999) ("The principle that no person shall be permitted to benefit from the consequences of his or her wrongdoing has long been applied to disqualify murderers from inheriting from their victims whether the route of inheritance is a will, an intestacy statute, or a life insurance policy") (cites omitted). Instead, it has deposited the proceeds ($350,-000 plus interest) into this Court's registry, and asks the Court to "determine all conflicting claims to said insurance proceeds and give direction as to the proper recipient of said proceeds." Doc. # 1 at 6.

## III. *ANALYSIS*

### A. Summary Judgment[2]

There is no dispute that the slayer's rule applies to John if he is criminally if not civilly convicted of Sauda's murder. *See, e.g., Krause v. Vance,* 207 Ga.App. 615, 622, 428 S.E.2d 595 (1993) (upholding "civil murder," or "slayer's rule" verdict that husband who murdered his wife could not recover her life insurance policy proceeds or inherit her estate).

Frances and Jason argue that, because they had no part in Sauda's death, the slayer's rule should not apply to them. Doc. # 29. Therefore, they assert, the Court should immediately release their claimed share of the proceeds ($25,000

each, as 25% beneficiaries under Policy B). *Id.*

■ But some jurisdictions extend the slayer's rule to also disqualify the killer's family, other than those also related to the victim. *Athmer,* 178 F.3d at 476; O.C.G.A. § 53–4–64(c). This *"extended* slayer's rule" would, of course, reach Frances and Jason. Thus, whether they are disqualified along with John depends on which version of the rule the Court applies here.

Applying Georgia's version seems like the appropriate choice since, at the time of her death, Sauda was living there. And this is a diversity-jurisdiction case. *See Continental Cas. Co. v. Adamo,* 326 F.3d 1181, 1182 (11th Cir.2003) ("In diversity cases, a federal court applies the law of the forum in which it sits") (quotes and cite omitted). But here the Court is presented with policies issued under a *federal* statute (SGLI) to a *federal* soldier. It follows that

> borrowing state law would be a mistake in the case of soldiers' life insurance policies [*i.e.,* SGLI policies]. Frequently as in this case the policy is issued wherever the soldier happens to be stationed when thoughts of mortality assail him. Although soldiers generally designate a U.S. state as their domicile, their connection with that state is often tenuous until retirement. It would be arbitrary to subject issues arising under the policy to the law of a particular state. Better that these policies should be governed by a uniform set of rules untethered to any particular jurisdiction.

*Athmer,* 178 F.3d at 475.

■ That means the Court must turn to *federal* common law. *Id.; Rice v. Office of Servicemembers' Group Life Ins.,* 260 F.3d 1240, 1247 (10th Cir.2001); *Coursey v. Pudda,* 299 F.Supp.2d 1368, 1370 (S.D.Ga. 2004). But, does the federal common law

---

**2.** This Court applies the summary judgment standards set forth in *Carlton v. Wal–Mart* *Stores, Inc.,* 234 F.Supp.2d 1358, 1360 (S.D.Ga.2002).

slayer's rule extend to bar both the slayer and his relatives?

Francis and Jason, of course, insist it does not. They cite *Athmer* in arguing that "the uniform federal rule does not cut out the murderer's bloodline." Doc. # 29 at 5. But that argument was not raised in *Athmer*, where the court expressly noted that it "need not decide whether that is or should be the federal common law rule governing murders by beneficiaries of [SGLI] policies." 178 F.3d at 477.

Yet, there is no other authority deciding this question. So, the Court must examine the reason for the "extended" rule before deciding whether or not it should form part of federal common law. Jurisdictions applying the "extended" rule do so to prevent killers from receiving even the "indirect benefits" of their wrongdoing. *Beck v. Downey*, 198 F.2d 626, 628 (9th Cir. 1952) ("If judicial policy dictates that [the killer] cannot take directly, no technical consistency should permit him to benefit indirectly by a gift to his family, especially a mother, from whom he would normally acquire property through the statues of descent and distribution"). The *Athmer* court cited

> [*In re*] *Estate of Vallerius* [259 Ill. App.3d 350, 196 Ill.Dec. 341, 629 N.E.2d 1185 (1994)][as] the plainest illustration [of this rationale]: the grandchildren murdered their grandmother, who had left her estate to their (innocent) mother, who dies, having devised her estate, now including the grandmother's money, to her children—the murderers. They were, of course, barred from taking under the mother's will.

*Athmer*, 178 F.3d at 476. Still, "[s]ubtler cases of indirect benefit can be imagined."

*Id.* Suppose Frances uses her part of the proceeds to defend her son in his upcoming murder trial. She could also buy her son law books in prison should he be convicted, perpetually fund his prison account, etc. *Id.* Plenty of redistribution scenarios can be conjured up, but in each John benefits (albeit circuitously) from his alleged misdeed.

Some jurisdictions, like Georgia, "have decided that the best way to deal with this and make utterly certain that the murderer does not profit from his crime is to disqualify *all* the murderer's relatives, except his or her children if they are also the victim's children." *Id.* (emphasis added); O.C.G.A. § 53–4–64(c). In other words, they have adopted the extended slayer's rule.

There is much that can be debated on that score. Determining whether "indirect benefits" may flow from a killer's relative to the killer requires "inherently speculative judgment about the future and an investigation of family relations quite likely to be of Faulknerian opacity." *Athmer*, 178 F.3d at 478. The extended rule, which disqualifies all relatives other than those also related to the victim, avoids such undesirable speculation, though at the expense of honest relatives who would not otherwise collaborate with the slayer.

Though perhaps unfair to honest relatives, the extended rule nevertheless allays all suspicion, drains at least *that* amount of financial incentive out of money-driven murders, and supplies a bright legal line (something judges like to draw in hopes of lessening litigation). On balance, it is a better practice than its non-extended version. Hence, the Court adopts it here.[3]

---

**3.** It is worth noting that the preceding exercise otherwise looks and feels like "judicial legislation." Congress could have, but has not made these public-policy choices. *Cf. Cook v. Grierson*, 380 Md. 502, 845 A.2d 1231, 1238 (2004) ("If statutes of descent and distribution need to be changed to allow the children of a slayer to inherit from the slayer's victim, the change should come from the leg-

Accordingly, if John is found civilly or criminally liable for Sauda's death, his mother Frances and brother Jason will also be disqualified from taking under her life insurance policies. The Court therefore denies their summary judgment motion.

### B. Bell's Cross–Claims

Frances and Jason also move (doc. # 29) to dismiss Bell's cross-claims, which assert (1) a claim for the entire proceeds; and (2) a wrongful death claim (under Georgia law) against John. Doc. # 27 at 3–4. Because ownership of the proceeds remains unresolved, Bell's first cross-claim cannot be dismissed at this time.

 As for Bell's second (wrongful death) cross-claim, the Tolberts argue that "[i]nterpleader is a mechanism that should be used only to determine the distribution of the interpleaded sum and not as a forum for litigating other causes of action that might exist between the parties." Doc. # 29 at 2. The Court construes this motion as an F.R.Civ.P. 12(b)(1) challenge to its 28 U.S.C. § 1367 supplemental jurisdiction, since wrongful death is a state law claim, and the Tolberts are basically arguing that this Court lacks jurisdiction to reach it.

There has been some debate over whether supplemental jurisdiction in interpleader is limited to only those claims that are the most directly related to the subject of the interpleader itself. *Travelers Ins. Co. v. First Nat'l Bank of Shreveport*, 675 F.2d 633, 637–38 (5th Cir.1982) (District court did not have ancillary jurisdiction over claimants' cross claims filed in insurer's interpleader action to determine ownership of the proceeds of life insurance policy, since the cross claims sought to invalidate the purported change of benefi-

ciary forms, power of attorney, and will executed by the insured prior to his death.); *Cherokee Ins. Co. v. Koenenn*, 536 F.2d 585, 588 (5th Cir.1976) (court, in interpleader action over insurance proceeds from building fire, did not have supplemental jurisdiction over claims arising out of building's sale).

But the Court need not resolve that issue if an independent basis of jurisdiction otherwise exists here. *See Travelers*, 675 F.2d at 638; *Cherokee*, 536 F.2d at 588. In other words, if the cross-claim could have been brought as a separate action here, then, assuming no "interpleader supplemental jurisdiction," the Court nevertheless must retain it on judicial economy considerations.

Bell's wrongful death cross-claim, if brought separately, would have satisfied the requirements for 28 U.S.C. § 1332 diversity jurisdiction. The Bells, after all, live in Kansas, John Tolbert lives in Georgia, his mother and brother live in Florida, doc. # 1 ¶¶ 5–6, and the amount in controversy exceeds $75,000. Doc. # 27 at 4. Hence, the Court cannot, on jurisdictional grounds, dismiss Bell's wrongful death cross claim either.

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motions of defendants Frances and Jason Tolbert for summary judgment (doc. # 19 & 21) and to dismiss (doc. # 29) defendant Wardell Bell's cross-claims. And, in that the Court (in a previous Order, doc. # 6) has already denied defendant John Tolbert's "Petition for Writ of Prohibition," Bell's F.R.Civ.P. 12(f) motion (doc. # 13) to strike the Petition is **DENIED** as moot.

The Court also *sua sponte* **DISMISSES** Bell's counterclaim against plaintiff Prudential Insurance Company of America, as he fails to state a claim against it.[4] Having deposited all proceeds with the Court,

---

islature and not the judiciary"). Meanwhile, the Court is presented with a case where justice demands that such a line be drawn *now*.

4. Bell has not been provided notice on this

Prudential has no additional liability in this matter. Prudential, then, is ***DISMISSED*** as the plaintiff in this action and the parties are realigned as follows:

WARDELL BELL and PATRICE L. BELL, as guardians of the minors Sadie A. Tolbert and Saadio Nia S. Tolbert, and WARDELL BELL, as Executor of the Estate of Sauda Tolbert, Plaintiffs, v. JOHN C. TOLBERT, FRANCES E. TOLBERT, and JASON J. TOLBERT, Defendants.

*See Weller v. Navigator Marine, Inc.,* 737 F.2d 1547, 1547 (11th Cir.1984) ("actual or substantial controversy" between the parties determines realignment) (quotes and cite omitted). All filings subsequent to this Order therefore shall bear this new "realigned" caption. Also in it, as well as in the caption of this Order, the Court has eliminated defendant "John Doe" as executor of Sauda Tolbert's estate, since defen-

dant Wardell Bell has been appointed to that position. Doc. # 15 exh. A.

Finally, defendant John C. Tolbert awaits trial in a Georgia court for his wife's homicide. Because his conviction there would resolve the core issue here, the Court ***STAYS*** this action pending that case's resolution. *See Continental Cas. Co. v. Adamo,* 364 F.3d 1299, 1299 (11th Cir.2004); O.C.G.A. § 33–25–13.

For case-management purposes then, the Court ***ADMINISTRATIVELY CLOSES*** this action subject to a timely reopen motion (including any F.R.Civ.P. 59(e) motion, *see supra* note 4) by any party with standing (hence, the burden is on the parties to monitor the parallel criminal case and alert the Court as to its outcome).

---

result. He thus may move for reconsideration under F.R.Civ.P. 59(e) if he can show

F.R.Civ.P. 61 level prejudice.